**Charles Arthur BIGGS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–01008–CR.**

Court of Appeals of Texas,
Houston (1st Dist.)

Nov. 9, 1995.

Rehearing Overruled Dec. 21, 1995.

Discretionary Review Refused
May 22, 1996.

---

R. Scott Shearer, Houston, for Appellant.

John B. Holmes, Lester Blizzard, Tracy Tirey, Houston, for Appellee.

Before OLIVER–PARROT, C.J., and MIRABAL and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

A jury found the appellant, Charles Arthur Biggs, Jr., guilty of indecency with a child and assessed punishment at five-years confinement. We affirm.

Appellant and his family lived in Deer Park, Texas. Appellant's daughter had a friend, J.C., who would come over to play at appellant's home. On July 14, 1991, J.C. came home from a birthday party at the appellant's residence. J.C.'s mother approached her daughter and asked her questions about whether she had ever played inappropriate games with the appellant. Specifically, J.C.'s mother asked her whether she had ever played "Murder in the Dark" or "School" with appellant. J.C. told her mother she played a game where they would turn off the lights and feel around the room for another person. She also told her mother that when they played "School," if appellant was "bad" they would spank him with books as he lay on the bed wearing only a robe with no underwear beneath.

J.C. also described a game called "Man Maid" in which appellant would do whatever she and appellant's daughter ordered him to do. J.C. told her mother that appellant's daughter asked him to take off his clothes and run around the back yard. She also told her mother that when he came in from the backyard he was carrying his clothes and was wearing only a jock strap. According to J.C., appellant then went into his bedroom and came back into the room wearing only an ace bandage which he told J.C. to unwrap. When she unwrapped the ace bandage, J.C. said that she saw appellant's penis. The child also told her mother that she watched a dirty movie at appellant's home and that he watched her through the window when she took a bath.

In points of error one and two, appellant contends the trial court erred by allowing the State to introduce evidence of J.C.'s outcry to her mother without complying with TEX.CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp. 1995).

■ Hearsay statements are not admissible under the Texas Rules of Criminal Evidence unless so provided by those rules or by statute. TEX.R.CRIM.EVID. 802. Article 38.072 provides a statutory exception which allows the State to introduce outcry statements made by a child abuse victim, which would otherwise be inadmissible as hearsay. The provisions of article 38.072 are mandatory. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim.App.1990).

Before the outcry statement is admissible, several requirements must be satisfied. First, at least 14 days before trial, the State must give the defendant (1) written notice that its intends to offer the hearsay statement; (2) the name of the witness through whom the statement will be offered; and (3) a written summary of the hearsay statement. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(1)(A), (B), (C) (Vernon Supp.1995).

Second, the trial court must hold a hearing outside the presence of the jury to determine if the hearsay statement is reliable based on time, content, and circumstances. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(2) (Vernon Supp.1995). Finally, the child must testify or be available to testify at the trial. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(3) (Vernon Supp.1995).

■ We first address appellant's second point of error, as its resolution is relevant to his first point of error. In point of error two, appellant contends that he did not receive a hearing in accordance with article 38.072, § 2(b)(2). However, the statement of facts shows that a hearing was held at which J.C.'s mother testified about her daughter's outcry statements. This hearing was held immediately before trial outside the presence of the jury. Appellant was able to cross-examine the witness and also make objections to the testimony, which the trial court overruled. The trial court found that the statements were reliable and allowed their use in court. This hearing complies with the requirements

of article 38.072, § 2(b)(2). We overrule appellant's second point of error.

■ Appellant contends that although the State did provide him with a summary statement as required by article 38.072, § 2(b)(1)(C), the summary was not adequate to apprise him of the content of the hearsay statements.

Very few Texas cases discuss the scope of the summary required under article 38.072. In *Norris v. State*, 788 S.W.2d 65 (Tex. App.—Dallas 1990, pet. ref'd), the summary of the statement provided by the State said that the child told her mother that a substitute P.E. teacher had come into a conference room where she was grading papers and put his hand under her panties and touched her private part. The teacher told her not to tell her mom because she wouldn't love her any more. *Id.* at 68. However, at the pretrial hearing the mother also added that the child told her that the teacher had touched her twice for a very long time, that he had unbuttoned his shirt, and that he had told the child he would do it again. *Id.* The defendant argued that the last statements were inadmissible because they exceeded the scope of the summary. Without determining whether the testimony exceeded the scope of the summary, the court held that the defendant suffered no harm because he had actual notice of the entire testimony prior to trial. *Id.*

In *Gottlich v. State*, 822 S.W.2d 734, 736 (Tex.App.—Fort Worth 1992, pet. ref'd), *overruled on other grounds by Curry v. State*, 861 S.W.2d 479, 483 n. 2 (Tex.App.—Fort Worth 1993, pet. ref'd), the summary showed that the child told the outcry witness that the defendant "had been playing with her down there with his hand." However, at the pre-trial hearing the outcry witness testified that the child told her that she did not want to go swimming at the defendant's house. The child also told the witness that the defendant "played with her and that he would wake her up in the middle of the night and she would tell him no and to leave her alone." *Id.* The outcry witness also testified that the child told her the abuse had been occurring for two months. *Id.* The court held that even though some of the statements offered were not described in the outcry summary, they spoke to the events leading up to the outcry statement that she did not wish to go swimming at the defendant's home. Thus, the court reasoned that admission of the extra statements was not error. *Id.* at 737. The court further concluded that appellant was not surprised by the statements, and thus suffered no harm. *Id.*

In both *Norris* and *Gottlich* the State provided a summary that contained specific statements offered by the child victims. The defendants then objected when the outcry testimony exceeded those specific statements. However, in this case appellant argues that the summary is actually too broad and did not provide any details of J.C.'s statements to her mother. The summary provided to appellant read:

> On June 29, 1991 the Defendant had sexual contact with [J.C.] and also exposed his genitals to her while she was at the Defendant's home visiting the Defendant's daughter.

■ We agree that the summary is deficient. It provides little more information than is contained in the indictment, and certainly does not summarize the detailed information that J.C. related to her mother about the "games" she played with appellant. However, the failure to lay the proper statutory predicate does not automatically result in harm. *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App.1992). The Court of Criminal Appeals has instructed the appellate courts that when the State fails to comply with article 38.072, we must engage in a Tex. R.App.P. 81(b)(2) harm analysis to "quantify the effect of the error." *Id.* (quoting *Sodipo v. State*, 815 S.W.2d 551, 554 (Tex.Crim. App.1990)).

■ In determining whether an error is harmless under Tex.R.App.P. 81(b)(2), we must consider five factors: (1) the source and nature of the error; (2) the extent to which the State emphasized the error; (3) the collateral implications of the error; (4) the weight that a juror would probably place on such an error; and (5) the likelihood that the State would repeat the error should it be declared harmless. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989).

■ The source and nature of the error was the improper admission of hearsay evidence over objection. When hearsay evidence is admitted, the defendant is deprived of the opportunity to cross-examine the declarant. However, in this case J.C. testified at trial. Therefore, appellant did have an opportunity to question her about the outcry statements that she made to her mother. This factor weighs in favor of finding the error harmless.

Next, we consider whether the State emphasized the outcry testimony offered through J.C.'s mother. A review of the statement of facts shows that the State did not emphasize the "outcry" testimony given by J.C.'s mother. In closing arguments, the State referred to the outcry testimony only once, and that was to establish the date of the offense. Instead, the State concentrated on J.C.'s live testimony at trial, rather than her hearsay statements to her mother. Thus, this factor favors finding harmless error.

■ Third, we consider the collateral implications of the testimony. The purpose of the notice and summary requirements of article 38.072 are to prevent surprise to appellant's counsel. *Fetterolf v. State*, 782 S.W.2d 927, 930 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). In determining whether a defendant has been harmed because of the State's failure to comply with the notice provisions of article 38.072, courts have looked to whether the defendant had actual notice of the testimony, opportunity to review the State's file, and ability to cross-examine the outcry witness. *See Gottlich*, 822 S.W.2d at 736 (noting that defense counsel had opportunity and did review the State's file and cross-examined witness); *Norris*, 788 S.W.2d at 67–68 (noting that defense counsel had opportunity to cross-examine the outcry witness at a hearing and at trial); *Fetterolf*, 782 S.W.2d at 930 (noting that defense counsel had actual notice as to the content of the outcry statement);

There is nothing in the record to indicate that appellant was surprised by the testimony. The trial court held a hearing outside the presence of the jury at which the defense counsel was able to cross-examine the outcry witness. At the hearing, the trial court specifically asked defense counsel whether he had access to the State's record, to which he replied affirmatively. The prosecutor told the trial court that the police reports in the State's file contained the outcry witness's statement to the police. After the hearing, appellant's counsel never claimed that he was surprised by the testimony or requested a motion for continuance. This factor also weighs in favor of declaring the error harmless.

Fourth, we consider the weight that a juror would place on the error. In this case, the error was the admission of hearsay evidence over appellant's objection. We consider it highly unlikely that the jury placed much weight on the hearsay statements offered by J.C.'s mother because J.C. herself testified about the events at the trial. Furthermore, the State produced another child witness, one of J.C.'s friends, who testified about a similar event. Finally, the State offered appellant's own statement in which he told of playing "Murder in the Dark" and "Blind Man's Bluff" with the neighborhood kids, and admitted that sometimes he played these games wearing only a robe and that it was possible that he could have exposed himself to the children while playing the games. He also mentioned playing the servant game with his daughter and J.C., and told of a time when J.C. challenged him to run around the backyard without his clothes, which he did, though he claimed that he was carrying his clothes in front of him when he came back in the house. During deliberations, the jury asked to have appellant's own testimony read back to them, not the testimony of J.C.'s mother. In light of the other evidence offered at trial, it is unlikely the jury placed much weight on the hearsay statements offered through J.C.'s mother. This factor also weighs in favor of harmless error.

■ Finally, we consider whether declaring the error harmless will encourage the State to repeat it with impunity. We are concerned about the behavior of the State in submitting an overly-broad summary that provided little more information than the indictment to defense counsel. However, finding that the error was harmless in this case

would not encourage the State to repeat the error with impunity. Although appellant made no showing of surprise in this case, if a defendant were able to show that he was surprised by the State's inadequate summary, reversal would be required. In light of our opinion in this case, we do not believe the State will be encouraged to submit "indictment-type" summaries in the future.

Error in overruling appellant's hearsay objection and admitting "outcry" evidence in the absence of the requisite statutory predicate was, in this case, harmless. We overrule point of error one.

■ In appellant's final point of error, he maintains that the evidence is factually insufficient to support the instant conviction. Where the appellant has no burden of proof on any of the issues, this Court has declined to engage in a factual review of the evidence. *Bynum v. State*, 874 S.W.2d 903, 908 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). We overrule appellant's third point of error.

We affirm the judgment.