Affirmed and Memorandum Opinion
filed March 17, 2011.

In
The

Fourteenth
Court of Appeals



NO. 14-10-00028-CR



Clinton Ray Ivy, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 413th Judicial District Court

 Johnson County,
Texas

Trial Court
Cause No. F43633



 

MEMORANDUM OPINION 

Appellant, Clinton Ray Ivy, appeals from his
conviction for continuous sexual abuse of a young child.[1]  A jury
found him guilty and assessed punishment at 50 years’ imprisonment.  In a
single issue on appeal, appellant contends that the trial court erred in
admitting hearsay testimony that went beyond the scope of the State’s notice of
outcry testimony under article 38.072 of the Texas Code of Criminal Procedure. 
We affirm.

Background

Appellant was indicted for continuous sexual abuse of
a young child pursuant to section 21.02 of the Texas Penal Code.  A person
commits an offense under that section if (1) during a period of thirty or more
days, the person commits two or more acts of sexual abuse against one or more
victims, and (2) at the time of the commission of each of the acts, the person
is at least seventeen years old and the victim or victims are younger than fourteen
years old.  Tex. Penal Code § 21.02(b).  The indictment specifically alleged
that appellant committed the offense against his former step-daughters, S.R.
and S.L.[2] 
Prior to trial, the State filed notices of its intent to use outcry hearsay
statements as permitted by article 38.072 of the Texas Code of Criminal
Procedure.  Each notice, one for S.R. and one for S.L., identified the girls’
mother as the outcry witness.

The summaries of expected outcry testimony included
in the notices informed appellant that the mother would testify that S.R. and S.L.
told her that when she left the family residence, appellant would take them
into his room and remove their clothing.  He would then take them into a
closet, make them touch his penis and put his penis into their mouths, and he
would then ejaculate.  The summaries further stated that appellant would enter each
of the girl’s rooms where he would touch and put his finger in their vaginas. 
According to the summaries, appellant told S.R. and S.L. that if they told their
mother, appellant would kill the mother.  Appellant allegedly committed these
acts of abuse every time the mother left the residence.

A hearing was held on the reliability of the outcry
statements under article 38.072, during which the mother and both girls
testified.  At the conclusion of the hearing, the trial court ruled that the mother
was the proper outcry witness for both girls.

In her testimony at trial, the mother testified that S.R.
and S.L. told her that appellant “touched them and made them do some nasty
things.”  She further said that the girls told her that appellant took them in
the bedroom, made them take off their clothes, “touched them in their private
areas,” and “made them put his [penis] in their mouths and he [ejaculated] in
it.”[3]  She
further said that the girls told her that appellant tried to put his penis
inside of one of them, but it did not penetrate.  The mother testified that her
daughters made these revelations after she informed them that she might be “getting
back together” with appellant.  She said that they were “real scared, real
shaky,” when they told her these things and that they said appellant told them
he would kill the mother if the girls told her.

The mother further testified that S.R. told her that
appellant would touch all over her, including on and inside her vagina.  He
would then tell her to lie on the bed where he would touch her on her private
areas.  In the closet, he would feel all over her and specifically all over her
chest.  Afterwards, appellant would take S.L. in the closet and then he would
make them both lay on the bed and he would touch both of them, telling them it
was “their little game . . . their little secret.”  Appellant’s counsel
objected several times during this portion of the mother’s testimony,
complaining that it was hearsay and exceeded the scope of the notice provided.

The mother further testified that S.L. told her that
appellant would touch all over her, including inside of her, and that after he
took her out of the closet, he would lay them both on the bed and touch them,
telling them it was “their little game, their little secret.”  S.L. also
reportedly told her mother that on some nights, appellant would put his hands
down her pants and his hand over her mouth and tell her to be quiet.  He would
then try to stick his penis in her vagina.  Appellant’s counsel was granted a
running objection that parts of the mother’s testimony were hearsay that went beyond
the notice provided by the State.

The mother additionally testified that she called
Child Protective Services (CPS) the next day after her daughters’ outcry
statements to her.  The girls were then interviewed at the Children’s Advocacy
Center and examined at Cook Children’s Hospital.  S.R. was eight and S.L. was
six during the period of time in which the sexual abuse allegedly occurred. The
mother stated that she had often left her children, S.R., S.L., and their
brother, with appellant when she went to the store.  The girls initially seemed
okay with this but later would cry and beg to go with her.  

In addition to the mother’s testimony, the State
introduced other evidence of appellant’s guilt.  Both Keene Police Department
Detective Patrick Jones and Chief Rocky Alberti testified regarding a
videotaped interview they conducted with appellant.  Appellant appeared
voluntarily for the interview, which occurred before he was arrested.  The
video also was played for the jury.  

During the course of the interview, the police
officers suggested to appellant that they may have recovered DNA evidence in
the form of semen from the girls’ clothes.[4] 
The officers asked appellant suggestive questions regarding how the supposed DNA
evidence may have ended up in various places.  Appellant responded by
discussing approximately a dozen occurrences of sexual situations or contact
between himself and either S.R., S.L., or both.  Several of appellant’s
descriptions involved situations where the girls surprised him while he was
masturbating (they supposedly opened a closet door or pulled back a shower
curtain or bed sheets), and appellant then ejaculated, hitting the girls with
his semen.  In several other descriptions, appellant recounted one or the other
of the girls grabbing his penis when he had an erection:  once in a hot tub,
once at a lake, and once when the children barged in on appellant and the
mother having sex.  Appellant stated that another time he had passed out drunk,
and when he woke, the girls were playing with his erect penis.  His
descriptions included times when his penis accidentally touched the girls’
mouths and when semen got on their mouths.

S.R. and S.L. also testified at trial; they were
respectively nine and seven at the time of trial.  S.R. stated that appellant
made her put his penis in her mouth.  She said it happened more than once and
every time her mom went to the store.  It occurred either in the closet or on
the bed and while her sister was there.  She said he disrobed the girls but did
not touch them.  She did not recall appellant telling her not to tell.

S.L. also testified that appellant made her put his
penis in her mouth.  She said it happened while her mom was at the store and
that it happened both on the bed and in the closet, but she could not recall
whether it happened on more than one occasion.  She additionally testified that
appellant told her not to tell her mother, but she did not remember what he
said would happen if she did tell her mother.

Araceli Desmarais, a sexual assault nurse examiner
with Cook Children’s Hospital, testified that she interviewed and examined S.R.
and S.L.  Both girls told Desmarais that appellant made them put his penis in
their mouths and then something emitted from it.  Regarding S.R., Desmarais
concluded that there was mouth-to-penis and hand-to-penis contact but no
vagina-to-penis contact.  She further concluded that the contact occurred more
than once and that appellant ejaculated during the contact.  Desmarais
testified that S.L. told her that appellant put his penis and his finger in her
vaginal area and that it hurt.  She also described kissing, anal contact, and
mouth-to-vagina contact.  She said that appellant showed her a movie with naked
people in it and told her not to tell her mother.  

Desmarais additionally noted that S. R. disclosed in
her interview that the biological father of S.R. and S.L, who is not appellant,
had touched S.R.’s vagina and that he washed her there with his bare hand in
the bathtub. S.L. also described the biological father washing S.L. with his
bare hand.  Desmarais explained the notion of “progressive outcry,” where
victims of sexual abuse initially hold back some allegations and only reveal
the entire story as they become more comfortable with the interviewer.  She
acknowledged that S.L. did not initially reveal some of the worst allegations
but did so only when asked specific questions.

Desmarais testified that the intake form for the
hospital revealed that allegations concerning the girls had previously been
made against their biological father and that the mother had allegedly coached
the girls to make such allegations.  She said that a physical examination of
the girls revealed intact hymens but that this was not unusual in cases of
sexual abuse.  She stated that she made no physical findings of sexual abuse
but concluded that there had been sexual abuse of S.R. and S.L.

Appellant’s counsel called CPS investigator Kelli
Longwith to testify.  She described a May 2008 investigation of S.R. and S.L.’s
biological father for suspected abuse.  The investigation concluded that no
physical or sexual abuse had occurred and that the mother of the two girls had
coached them to make the allegations.  The mother apparently was motivated by a
pending divorce which involved child custody issues.  Prior to the
investigation, S.R. had made an outcry to her teacher about her biological
father.  S.R.’s first grade teacher, Cindy Whitehead, also testified that S.R.
told her that she was afraid her biological father was going to rape and beat
her and her siblings.  Whitehead further explained that S.R. told her that
S.R.’s mother “was trying to make it where her
real father would not get them.”

Standards of Review

As stated above, in his sole issue on appeal,
appellant contends that the trial court erred in admitting hearsay testimony
that went beyond the scope of the State’s notice of outcry testimony under
article 38.072 of the Code of Criminal Procedure.  Hearsay statements are
generally inadmissible unless permitted by statute or evidentiary rule.  See
Tex. R. Evid. 802, 803.  Article 38.072 provides a statutory exception to the
hearsay rule that allows the State to introduce outcry statements, which would
otherwise be considered inadmissible hearsay, made by a child victim of certain
offenses, including the one at issue in the present case.  Tex. Code Crim. Proc.
art. 38.072.  It permits the statements of a child victim describing the
alleged offense to be admitted through an “outcry witness,” i.e., the first
adult to whom the child made a statement about the alleged offense.  Id.

In order to invoke the statutory exception, the State
must notify the defendant of its intent, provide the name of the outcry
witness, and provide a summary of the statement.  See id. art. 38.072 §
2(b)(1).  The purpose of these requirements is to avoid surprising the
defendant with the introduction of outcry hearsay testimony.  See Gay v.
State, 981
S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).  To
achieve this purpose, the written summary must give the defendant adequate
notice of the content and scope of the outcry testimony.  Davidson v. State,
80 S.W.3d 132, 136 (Tex. App.—Texarkana 2002, pet. ref’d).  The notice is sufficient if it reasonably informs the
defendant of the essential facts related in the outcry statement.  Id.  A trial court’s determination that an outcry statement is
admissible under article 38.072 is reviewed under an abuse of discretion
standard.  Nino v. State, 223 S.W.3d 749, 752 (Tex. App.—Houston [14th
Dist.] 2007, no pet.) (citing Garcia v. State, 792 S.W.2d 88, 92 (Tex.
Crim. App. 1990)).

Discussion

Appellant complains that the mother was permitted to
testify over objection beyond the scope of the summaries provided for her
testimony.[5] 
Although appellant suggests that the mother provided a “plethora” of statements
beyond the scope of the summaries and her hearing testimony, he specifically
complains regarding her testimony that the girls told her that:  (1) appellant
would lay them down on the bed and feel all over them; (2) he touched all over
S.R.’s chest; and (3) he sometimes would put his hand down S.L.’s pants and a
hand over her mouth and tell her to be quiet while he tried to put his penis
inside her.

We agree with appellant that portions of the mother’s
testimony went beyond the scope of the summaries and that the testimony in
question was regarding essential facts.  See generally Klein v. State,
191 S.W.3d 766, 781 (Tex. App.—Fort Worth 2006) (holding that summary provided
“essential facts” of the outcry statement and that complained-of testimony
beyond the scope of the summary went to “nonessential facts,” i.e., facts
describing peripheral circumstances or circumstances leading up to the outcry
statement), rev’d on other grounds, 273 S.W.3d 297 (Tex. Crim. App. 2008).[6]  The
mother’s testimony included conduct of a nature not revealed in the summaries,
particularly the allegation that appellant attempted to put his penis in S.L. 
The trial court erred in permitting this testimony over timely objection.  See
Wheeler v. State, 79 S.W.3d 78, 84 (Tex. App.—Beaumont 2002, no pet.)
(holding trial court erred in admitting testimony not described in article
38.072 notice).

However, our analysis does not end there.  We may not
reverse a conviction due to erroneous admission of hearsay testimony unless we determine that it affected appellant’s
substantial rights.  See Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b); Dorado v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992) (requiring a nonconstitutional harm analysis for
hearsay statements incorrectly admitted as exceptions under article 38.072).  An error
affects a substantial right “when the error [has] a substantial and injurious
effect or influence in determining the jury’s verdict.”  King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Thus, we affirm a criminal conviction despite
nonconstitutional error if, after examining the record as a whole, we are left
with the fair assurance that the error did not influence the jury or influenced
the jury only slightly.  Schutz v. State, 63 S.W.3d 442, 443 (Tex. Crim. App. 2001); see also O’Neal v. McAninch, 513
U.S. 432, 438 (1995) (holding that error must be considered harmful if “grave
doubt” exists as to whether it had a “substantial and injurious effect or
influence” upon the jury). We consider the entire record in assessing any
impact that the error had on the jury’s decision, including the nature of the
evidence supporting the verdict, as well as the character of the error and its
relationship to other evidence, to determine if the error substantially
affected an appellant’s rights.  Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

Here, the mother’s testimony beyond the scope of the
article 38.072 summaries was relatively minor evidence in light of the
substantial evidence of appellant’s guilt from other sources.  As recounted in
some detail above, the two girls themselves provided significant testimony
regarding the abuse they suffered.  The outcry testimony from their mother
which was in keeping with the summaries was far more detailed than the few
statements that were not contained in the summaries.  Araceli Desmarais, the
sexual assault nurse examiner, provided even more detailed testimony regarding
statements by the girls than did the mother.  According to Desmarais, it was
common for subsequent investigators to obtain greater detail from child victims
because of a process she termed “progressive outcry,” through which victims
become more comfortable about recounting abuse over time.  Desmarais
specifically testified that S.L. described appellant putting his penis in her
vaginal area, an allegation similar to one of the complained-of statements in
the mother’s testimony.

It is further likely that the jury viewed the
videotape of appellant’s interview with police as strongly indicative of his
guilt.  The jury could have reasonably concluded that appellant concocted
numerous far-fetched explanations for sexual contact with his step-daughters,
as seen in the videotape, in an attempt to evade prosecution.  In the light of
the substantial evidence against appellant from numerous sources, we are left with the fair assurance that the trial
court’s error in admitting certain hearsay testimony either did not influence
the jury or only influenced the jury slightly.  See Schutz, 63 S.W.3d at 443; see also Biggs v. State, 921 S.W.2d 282, 87–88 (Tex.
App.—Houston [1st Dist.] 1995, pet. ref’d) (holding error in admitting hearsay
outcry statements was harmless at least in part because of the nature of other
evidence, including complainant’s testimony and defendant’s own admission to
certain conduct around children).  Accordingly, we find such error to be
harmless and overrule appellant’s sole issue.

            We affirm the
trial court’s judgment.

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges, Justice Jamison, and
Senior Justice Mirabal.[7]

Do Not Publish — Tex. R. App. P. 47.2(b).









[1]
This appeal was originally filed with the Tenth Court of Appeals and was
transferred to this court.  We apply precedent from this court unless it
would be inconsistent with precedent from the transferor court.  See
Tex. R. App. P. 41.3.





[2]
To protect the children’s privacy, we will refer to them and their mother by
pseudonyms.





[3]
In the mother’s testimony, as well as that of each of the girls, euphemisms
were used in place of particular body parts.  It was clearly established at
trial what the euphemisms stood for, so we will use the more formal terms in
this opinion.





[4] In their testimony, the officers acknowledged that
these representations were untrue and that no DNA evidence had been recovered
during their investigation.

 





[5]
Although in his briefing, appellant only specifically complains regarding the
notice and testimony related to S.L.’s outcry, we will consider his complaint
as challenging the outcry testimony related to both S.L. and S.R.  Appellant’s
counsel properly objected below to the testimony relating to both girls.





[6]
The State suggests that any error in the admission of the mother’s testimony
was cured when similar testimony was elicited from Araceli Desmarais.  See
generally Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (“An
error in the admission of evidence is cured where the same evidence comes in
elsewhere without objection.”).  We disagree.  Desmarais did not provide the
same testimony as the mother.  Desmarais testified regarding what the girls
told her in the interviews, not regarding what the girls told their mother. 
Furthermore, the details of the two accounts were different in some respects.





[7]
Senior Justice Margaret Garner Mirabal sitting by assignment.