# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00254-CR

**Preston Lamar Thomas, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT
### NO. 5626, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Preston Lamar Thomas of three counts of aggravated sexual assault of a child and sentenced him to sixty-five years' imprisonment on each charge. The trial court signed three judgments in accordance with the jury's determinations and set the three sentences to each run consecutively. On appeal, Thomas argues that the trial court should have held a hearing to determine the reliability of the victim's outcry statements and erred in allowing a nurse to testify about statements made to her by the victim.[1] We affirm the trial court's judgments of conviction.

---

[1] In Thomas's brief, he also lists a third issue, asserting that he received ineffective assistance of counsel because his trial attorney did not request experts to assist in his defense. However, Thomas's brief does not mention the issue of ineffective assistance anywhere outside of the "Issues Presented" page, and we will not consider that issue. *See* Tex. R. App. P. 38.1(i); *Jessop v. State*, 368 S.W.3d 653, 681 (Tex. App.—Austin 2012, no pet.).

**Factual and Procedural Summary**

Thomas assaulted the daughter of his girlfriend on three occasions, penetrating her anus with his penis each time.[2] The victim had just turned eight when she made her outcry, and her aunt, Amanda Saldovar, was the first outcry witness. Before testimony before the jury began, the trial court held a hearing to determine the admissibility and substance of Saldovar's testimony. During that hearing, the State asked Saldovar to describe the circumstances leading up to the outcry and what the victim told her about the assault. After the State passed the witness, Thomas's attorney said he did not need to ask any questions, that he had "it worked out as to who would be the proper outcry witness relating to each of the three counts," and that Saldovar was "a proper outcry witness relating to the third chronological event." Counsel and the prosecutor agreed that Mike Betancourt, the director of the advocacy center who interviewed the victim after her initial outcry, would be the outcry witness about the first two assaults. Counsel concluded, "I think I have the information I need at this point so that I can lodge proper objections if one of the witnesses tries to go into something else, so I don't believe we need any additional hearing as far as I'm concerned."

At trial, Saldovar testified about the victim's outcry to her about the final assault, explaining that when the victim said "her bottom was hurting," she looked to see "if maybe she had hemorrhoids" and saw that the victim's anus was red and had "some discharge on it." Saldovar asked the victim if anyone had touched her there, and the child said Thomas "had put his penis

---

[2] The facts are well-known to the parties, and we therefore will not recite them in great detail in this opinion. *See* Tex. R. App. P. 47.1 (appellate court opinions should be as "brief as practicable"), 47.4 (memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

there." Saldovar immediately notified the police, and the next day, she and the victim's mother took the victim to a child advocacy center for an examination and interview. Betancourt testified about the victim's outcry to him about the first two assaults. The victim testified and described three separate assaults, and her grandmother testified about the victim's demeanor and behavior before and after her outcry. Rachelle Buley, the Sexual Assault Nurse Examiner (SANE) who conducted a SANE exam shortly after the victim made her outcry, testified about her physical findings and about the victim's responses when asked why she was going to have the exam. Thomas objected that Buley's testimony about the victim's statements was hearsay and that the victim's statements were not of use to the medical examination. The trial court overruled the objection, saying, "No, it falls clearly within the medical examination."

## Article 38.072 Hearing

Article 38.072 governs the hearsay statements of child victims of sexual assault. *See* Tex. Code Crim. Proc. art. 38.072, § 1. A hearsay statement about a child's outcry of assault is admissible if the State notifies the defendant of its intent to offer the statement, "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, conduct, and circumstances of the statement," and the child testifies or is available to testify. *Id.* § 2(b). Thomas argues that the trial court committed reversible error because it did not conduct an Article 38.072 hearing or make specific findings about reliability. We disagree.

First, Thomas did not object to the trial court's failure to continue the hearing beyond Saldovar's testimony and the discussion about which witness would be an outcry witness for which assault, nor did he object to Saldovar's or Betancourt's testimony at trial. Therefore, Thomas has

3

waived any error. *See Bradshaw v. State*, No. 03-10-00415-CR, 2012 Tex. App. LEXIS 6193, *13 (Tex. App.—Austin July 26, 2012, pet. ref'd) (mem. op., not designated for publication); *Cates v. State*, 72 S.W.3d 681, 698 (Tex. App.—Tyler 2001, no pet.); *Rodriguez v. State*, 762 S.W.2d 727, 731 (Tex. App.—San Antonio 1988, pet. dism'd). Further, as to Saldovar's testimony, the trial court did hold a hearing that satisfied article 38.072. *See Biggs v. State*, 921 S.W.2d 282, 284-85 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). Finally, even if the trial court had erred, the record reflects that Saldovar's and Betancourt's testimony about the victim's outcries was admissible under article 38.072. *See Carty v. State*, 178 S.W.3d 297, 306-07 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (outcry was reliable because victim said she knew difference between truth and lies, described assaults in detail and in her own words, statement was consistent with victim's trial testimony, and outcry witness asked open-ended, not leading, questions in eliciting outcry); *Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd) (indicia of reliability include whether victim testifies, admits making statement, understands need to tell truth, and can observe, recollect, and narrate; whether other evidence corroborates statement; whether statement was made spontaneously or seems to have been prompted or manipulated; whether victim's statement was clear and unambiguous, consistent with other evidence, and described event that child of victim's age would not be likely to fabricate; victim's behavior after contact; whether victim had motive to fabricate accusation or expected to be punished for making outcry; and whether defendant had opportunity to commit offense). We overrule Thomas's first issue.

## SANE Nurse's Testimony

In his second issue, Thomas argues that it was error to allow Buley to testify about the victim's allegations of the assaults. He argues that the trial court should have required the State

4

to show that the victim's statements were made for the purpose of and important to medical treatment and that the victim understood that importance before making her statements.

A statement "made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause of external source thereof insofar as reasonably pertinent to diagnosis or treatment" is admissible as an exception to the hearsay rule. Tex. R. Evid. 803(4). Buley testified that she spoke to the victim for a few minutes before asking her to explain "in your own words why you're here today." The victim told her that Thomas "hurt her in her hiney" three times and acted like she was ashamed of what had happened. The victim also told Buley that after one assault she bled. Buley then conducted an examination of the victim's anal and genital areas. She did not find anything abnormal in the vaginal exam, but she did find three tears in her rectum that were consistent with a recent sexual assault.

Based on this record, we agree with the State that it can be inferred that the victim knew it was important to tell the truth in order to obtain medical treatment or diagnosis and that asking about the assaults was important to the child's medical diagnosis or treatment. *See Taylor v. State*, 268 S.W.3d 571, 589-91 (Tex. Crim. App. 2008) (absent evidence to the contrary, courts may presume that in immediate aftermath of assault or on "physician's cold examination table," child of sufficient age or maturity will have "implicit awareness" that honesty will serve her best interest); *Beheler v. State*, 3 S.W.3d 182, 188-89 (Tex. App.—Fort Worth 1999, pet. ref'd) (no requirement that victim explicitly state she understands need to be truthful, and courts should determine if record shows that child understood why she needed to be honest; statement describing sexual assault is pertinent to diagnosis and treatment).

5

We further agree with the State that even if the admission of Buley's testimony had been erroneous, such error was harmless because the same or similar evidence was properly offered through the testimony of Saldovar, Betancourt, and the victim herself. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010).

We overrule Thomas's second issue.

## Conclusion

Having overruled both of Thomas's issues, we affirm the trial court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 23, 2013

Do Not Publish