**Opinion issued October 30, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-13-00723-CR

—————————————

**WILLIAM HAYWARD FREEMAN, SR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1322259**

---

## MEMORANDUM OPINION

A jury found appellant, William Hayward Freeman, Sr., guilty of aggravated sexual assault of a child under the age of fourteen, and, after finding one enhancement paragraph true, the trial court assessed punishment at seventy-five

years' confinement. In his sole point of error, appellant contends the trial court abused its discretion by allowing an outcry witness to testify at trial to a "substantially different version of events" than that provided in the State's pretrial notice. We affirm.

## BACKGROUND

On September 5, 2011, Deshaundra Gbadamosi left her three children at her mother's home with appellant while Gbadamosi and her mother, Mary Knighton, went to the grocery store. Seven-year old S.M. was watching television with her brother and her cousin in their grandmother's room. Appellant was in the room with them. S.M. went into the hallway bathroom. Appellant left the room around this time as well.

While S.M. was still in the bathroom, her older sister, D.F., asked the other children where S.M. had gone. The children indicated toward the bathroom, so D.F. went to the door of the hallway bathroom, but could not open it because the door was locked. After trying to open the door, appellant walked out of the bathroom; S.M. was still inside. D.F. testified S.M. looked "shaken up a little bit" and "had a funny look on her face." D.F. also noticed a screwdriver was on the bathroom sink. D.F. asked S.M. what happened, but she did not respond.

Knighton received several calls indicating that something had happened, so Knighton and Gbadamosi left the grocery store and drove back to Knighton's

home. When they both arrived, Gbadamosi testified at trial that appellant looked nervous and left the house immediately thereafter. S.M. was crying and would not tell her mother what was wrong. After Gbadamosi assured S.M. that she loved her and that whatever had happened was not S.M.'s fault, S.M. told Gbadamosi what had transpired.

Pursuant to article 38.072 of the Texas Code of Criminal Procedure, the State provided appellant with pretrial notice of their intent to offer an outcry witness and a pretrial summary of the hearsay statement being offered through the witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b) (Vernon Supp. 2014.) (providing that outcry statement is not hearsay if, on or before 14th day before trial begins, the State notifies defendant of intention to offer outcry statement and provides defendant with name of outcry witness and written summary of the statement) The summary in this case stated:

> Complainant [S.M.] told Deshaundra Gbadamosi on or about September 5, 2011 that she was in the restroom and that William Freeman opened the door with a screw driver and pulled his pants down and told her to keep her pants down and then picked her up from the toilet and placed her on the sink counter top. William Freeman then penetrated her from the front (vagina) while holding onto her back and moving her body back and forth and kissing her on the mouth. William Freeman rubbed her bottom (butt) and tried to penetrate her from behind.

3

Outside the presence of the jury, the judge conducted a hearing to determine if the statement was admissible. The relevant part of the hearing proceeded as follows on direct examination:

Q: When you asked her what was wrong, what did she tell you?

A: First she say[sic], nothing.

Q: Okay.

A: And then she was like, he touched me.

Q: At first she said nothing, then she says he touched her. Is this still all within the same conversation?

A: Yes, same conversation.

Q: So her first comment to you of nothing was just the first thing she said?

A: Yes.

Q: Okay. And she said the words, he touched me?

A: Yes.

Q: What else did she say?

A: That she was scared to tell me because he told her she better not tell.

Q: Okay. Did you keep asking her?

A: Yes. I also examined her.

Q: We'll get to that in a moment. When you keep asking her, what does she say?

4

A: She told me that she was using the restroom and he came in the restroom behind her and he locked [sic] the door with a screwdriver. He sat her on the sink, told her to be quiet, and pulled down her pants more, because she was using the restroom. And he told her not to say anything; if she did, he would do something to her.

Q: Okay. Now, just want to be clear for the record. You said that [S.M.] —the part about the screwdriver, you said he unlocked it or locked it?

A: The door was locked. He came in the door and unlocked it with a screwdriver.

Q: Now, after she tells you this part, she was in the bathroom, he comes in, tells her to be quiet, what happens?

A: She was trying to get out. He put his hand over her mouth so she couldn't make any noise.

Q. And what did she say happened next?

A: My daughter came to the door and that's when he let her out.

Q: Now, did [S.M.] tell you about any sexual contact between herself and this person?

A: Yes.

Q: What did she tell you?

A: That he tried to put his private area in hers.

Q: Now, she—you just said he tried to?

A: Yes.

Q: Are those the exact words that she used or are you recalling what she said?

A: I'm recalling it. It may not be the exact words.

5

The defendant objected to the admissibility of these statements on the ground that various details of Gbadamosi's testimony were not provided in the State's summary. The trial court allowed Gbadamosi to testify at trial, finding her testimony to be "reasonably reliable as to time, content, and circumstance." At trial, Gbadamosi provided similar outcry testimony.

## OUTCRY STATEMENT

### A. *Admissibility of the outcry statement*

In his only point of error, appellant contends "the trial court erred in admitting outcry witness testimony that was substantially different form the State's 38.072 notice."

#### 1. *Standard of Review and Applicable Law*

"Our standard of review for evidentiary decisions by the trial judge is the abuse of discretion standard." *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999) (en banc). "In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). "In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made." *Id.*

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

6

matter asserted." TEX. R. EVID. 801(d). The general rule for the admissibility of hearsay evidence is it "is not admissible except as provided by statute or [the Texas Rules of Evidence] or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 802. Article 38.072 of the Texas Code Criminal Procedure provides an exception to the general hearsay rule. TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005 & Supp. 2014).

The provision "allows the State to introduce outcry statements made by a child abuse victim, which would otherwise be inadmissible as hearsay." *Biggs v. State*, 921 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Outcry statements are "the victim's statements made to the first person, other than the defendant, 18 years of age or older, which describes the alleged offence." *Moore v. State*, 233 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 38.072, § (2)(a)). The State is allowed to introduce those statements if it follows the mandatory requirements of the statute. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b); *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) ("[T]he provisions of the statute, including the notice and hearsay requirements, are mandatory."). "The purpose of the notice requirement is to prevent the defendant from being surprised by the introduction of the outcry-hearsay testimony." *Gay v. State*, 981 S.W.2d 864, 866 (Tex. App.— Houston [1st Dist.] 1998, pet. ref'd).

First, to comply with article 38.072 the State on at least fourteen days before trial must provide the defendant with (1) written notice they intend to offer the hearsay statement; (2) provide the defendant "with the name of the witness through whom it intends to offer the statement"; and (3) provide the defendant with a written summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(1)(A)–(C). The summary "must give the defendant adequate notice of the content and scope of the outcry testimony." *Gay*, 981 S.W.2d at 866. A trial court does not commit error in admitting statements describing the circumstances leading up to the outcry statement even if those statements were not included in the pretrial summary. *Gottlich v. State*, 822 S.W.2d 734, 737 (Tex. App.—Fort Worth 1992, pet. ref'd). However, the summary does have to provide more information than what was contained in the indictment. *Biggs*, 921 S.W.2d at 285.

Second, the trial court must conduct a hearing outside of the presence of the jury. TEX. CODE CRIM. PROC. ANN. art. 38.072 §2(b)(2). Upon listening to the statement, the trial judge must find it to be "reliable based on the time, content, and circumstances of the statement." *Id.* Last, the alleged victim must testify or be available to testify at trial. *Id.* § 2(b)(3).

### 2. Analysis

Appellant asserts the State's summary was insufficient because Gbadamosi's testimony exceeded the scope of the summary. Appellant asserts the statement

8

"was not adequate to apprise him of the essential facts of the hearsay statements." Specifically, appellant argues the following statements by Gbadamosi at trial exceed the scope of the summary:

1.      that the complainant initially said "nothing happened" in response to Gbadamosi's questions;

2.      that appellant touched S.M.;

3.      that appellant told S.M. "you better not tell" and that if she did tell "something would happen to her;"

4.      that S.M. was trying to get out of the bathroom;

5.      that appellant put his hand over S.M.'s mouth so she could not make any noise;

6.      that S.M.'s older sister came to the door and that is when appellant let S.M. out of the bathroom;

7.      and that appellant tried, but did not penetrate S.M.

We review each statement in the outcry testimony to which appellant has objected, and begin by noting that the State's summary was more than a broad summary containing little more information than the indictment.

Regarding statement 1—S.M.'s telling Gbadamosi "nothing happened" in response to being questioned about the incident—the information was merely a detail leading up to the outcry statement. *See Gottlich*, 822 S.W.2d at 737 (holding admissible testimony outside of statement notice that merely describes circumstances peripheral to alleged abuse and leading up to outcry statement); *see*

9

*also Weeks v. State*, nos. 14-08-00137-CR, 14-08-00138-CR, 2009 WL 1325461, at *2 (Tex. App—Houston [14th Dist.] May 14, 2009, pet. ref'd) (mem. op., not designated for publication) (holding same). Thus, the trial court did not err in allowing Gbadamosi to testify to this statement.

Statements 2 and 7—that appellant touched and tried to penetrate S.M.—are actually included in the summary. The notice provided that appellant picked S.M. up and set her on the sink, necessarily touching her in the process. The notice also provides that appellant "rubbed her bottom (butt) and tried to penetrate her from behind." Thus, the trial did not commit error in admitting statements 2 and 7.

Regarding statement 6—that appellant released S.M. only after S.M.'s sister came to the bathroom door—Gbadamosi did not testify to this evidence before the jury. Therefore the provisions of article 38.072 do not apply. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b) (requiring an actual statement before procedures of the hearsay exception apply).

Regarding statements 3, 4, and 5—that S.M. was trying to get out of the bathroom, that appellant put his hand over S.M.'s mouth told her she had "better not tell," and that if she did tell "something would happen to her"—we agree that those statements are outside the scope of the State's notice.

A summary containing certain details but omitting others may not meet the notice requirements of article 38.072. *See Gay*, 981 S.W.2d at 866. In *Gay*, the

10

pertinent part of the summary read, "On June 14, 1995, [the complainant] told [the outcry witness] that Mike, a man who lives with her family had kissed her and touched her." *Id.* However, "[a]t trial, the outcry witness testified the complainant said appellant bothered her, made her touch him, threatened her, touched her everywhere, and kissed her." *Id.* at 865. Because the summary included only that the appellant had "kissed and touched" the complainant, and did not include anything about any threats the appellant made, the appellant forcing the complainant to touch him, or the appellant having "bothered" the complainant, this Court held that the summary was insufficient. *Id.*

Similar to the summary at issue in *Gay*, the summary here provided no indication of any threats made by appellant or he had covered S.M's mouth to keep her from making noise. *See Gay*, 981 S.W.2d at 866. Therefore, it was error for the trial court to admit these statements because they were not in the summary. *See Wheeler v. State*, 79 S.W.3d 78, 84 (Tex. App.—Beaumont 2002, no pet.) (holding the trial court committed error in admitting statements that included appellant watching his daughter and the victim dance in their underwear when the summary lacked those details).

## B. Harmless Error

"The Court of Criminal Appeals has instructed the appellate courts that when the State fails to comply with article 38.072, we must engage in a harm

11

analysis to 'quantify the effect of the error.'" *Gay*, 981 S.W.2d at 867 (quoting *Dorado v. State*, 843, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992)). Pursuant to Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error must be disregarded unless it affects the defendant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Wilson v. State*, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.). This Court will not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93. Important factors that are considered include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

Here, the error was improper admission of hearsay evidence. "When hearsay evidence is admitted, the defendant is deprived of the opportunity to cross-examine the declarant." *Biggs*, 921 S.W.2d at 285. However, S.M. testified at trial, granting

12

appellant the opportunity to cross-examine her about the outcry statements she made to Gbadamosi. In closing argument, the State did mention the testimony by Gbadamosi. However, the State referred to Gbadamosi's testimony in general and the State did not emphasize the nonadmissible statements. Instead, the State specifically emphasized certain aspects of the testimony given by S.M., her sister, D.F., and other witnesses. Furthermore, the State also placed more emphasis on the testimony of S.M. by making her testimony the very last thing it mentioned before the jury deliberated.

In analyzing for harmless error, courts have also considered whether the appellant had the opportunity to cross-examine the outcry witness and whether the appellant had actual notice of the testimony. *Biggs*, 921 S.W.2d at 286. Here, appellant had an opportunity to cross-examine the outcry witness both at the hearing and during the trial. In addition, he was able to cross-examine S.M., who also testified at trial. Although appellant claims he was surprised by the testimony, he does not suggest how, had he possessed the information before trial, the preparation of his defense would have been any different.

Further, it is unlikely the jury placed much weight on the inadmissible statements Gbadamosi made because other evidence of appellant's guilt was overwhelming. S.M. herself testified at trial about the incident. Furthermore, D.F., who was present at Knighton's house at the time of the incident, also testified as to

what she witnessed, including the facts that appellant was discovered in a locked bathroom with S.M., that a screwdriver that he had apparently used to obtain access to the bathroom was sitting on the sink, and that appellant released S.M. after D.F. knocked on the bathroom door. When confronted by S.M.'s mother, appellant stated, "I'm sorry. If I did anything, I apologize, just don't send me to jail." Perhaps most importantly, there is evidence in the record that appellant's DNA was recovered in S.N.'s vagina and from her panties. It is highly unlikely a juror would have placed more emphasis on the inadmissible statements as compared to the testimonies of S.M. and D.F. and the DNA evidence.

After viewing the record as a whole, we hold that error in admitting statements through Gbadamosi's testimony about appellant holding his hand over S.M.'s mouth and threatening her during the assault, was harmless.

Accordingly, we overrule point of error one.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).

14