**Micheal Joseph GOWAN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–115–CR.**

Court of Appeals of Texas,
Fort Worth.

July 18, 1996.

Versel Rush, Office of Public Defender, Wichita Falls, for appellant.

Barry L. Macha, Criminal Dist. Atty., Gerald W. Taylor, John W. Brasher, Asst. Criminal Dist. Attys., Wichita Falls, for appellee.

Before RICHARDS, BRIGHAM and HOLMAN, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Micheal Joseph Gowan was convicted of aggravated sexual assault, aggravated kidnapping, and burglary of a habitation. *See* TEX. PENAL CODE ANN. §§ 22.021, 20.04, 30.02 (Vernon 1994). The jury that found him guilty assessed his punishment at two life prison terms and confinement for 99 years for the burglary. Gowan contends the

trial court erred in refusing to allow him to review materials in the State's possession pertaining to assaults committed by a serial rapist and with which Gowan had not been charged. He also argues that the trial court erred in refusing to grant him a new trial based upon prosecutorial misconduct. We overrule both of his points of error and affirm the judgment of the trial court.

## BACKGROUND

Between May of 1992 and October of 1993, 13 different women were assaulted in 12 incidents which Wichita County officials considered the work of a "serial rapist." Gowan became a suspect in some of the attacks, and police began surveillance of him on August 19, 1993. One week later, police observed Gowan parking a white van in the 5000 block of Lindale Street. On September 12, 1993, neighbor Roger Simmons saw someone matching Gowan's description peering in the window of the residence from which 14–year–old "Michelle" [1] was kidnapped on October 3, 1993.

Michelle testified that some time between 12:30 a.m. and 1 a.m. on October 3, 1993, she was awakened by a man who put his hands over her mouth while she lay in bed. The man threw Michelle out of the bedroom window and took her to a white van down the street. A neighbor, Bobbie Forbus, heard two screams and looked out her bedroom window to see a man crossing her yard with a girl who was placed into what was described as a "junky" white van with a red toolbox inside it.

The man forced her to perform oral sex before penetrating her vaginally and anally and performing oral sex on her. Michelle's arms, eyes and mouth were then taped. She said she thought the man wore latex surgical-type gloves because she tasted rubber when he placed his hand over her mouth. The man drove Michelle from the field where the assaults occurred to a garage where he left her for about 30 minutes. When the man returned, he took Michelle to a house and placed her in a closet, from which she later escaped. She hopped down the street and was eventually helped by a passerby.

Michelle's stepfather Mark B. was awakened by a scream around 3 a.m. on October 3. Mark noticed that a kitchen window was open and the screen was missing. During his investigation, he saw that Michelle was missing and that her window was open. Mark B. called 911 after he was unable to find Michelle.

Police Officer Sharon Ritchie was heading toward Michelle's Lindale Street home between 3:45 a.m. and 3:55 a.m. when she saw a speeding white van run a stop sign. Officer Ritchie was unable to catch up with the white van but later saw an identical van parked in front of Gowan's address.[2] Less than ten minutes after Officer Ritchie arrived, she saw a blue, two-door Buick drive toward the address. The car's lights were off, despite the fact that it was still dark. Officer Ritchie said the Buick slowly approached McGaha Street but that the driver gunned the engine and sped up as he approached McGaha. The Buick hit the north curb of the street before coming to a stop, and the man driving it ran into the house on McGaha.

Around 7 a.m., a detective rang the doorbell on McGaha but got no response. When the detective opened the screen door to knock on the wooden entrance door, the detective noticed the finger portions of a latex glove protruding from the door jamb. Approximately an hour later, Kathy Gowan, the owner of the house, arrived and invited the officers inside. She allowed police to search the house for Gowan, but he could not be located. The detective told her that he believed Gowan was inside, and Kathy asked police to wait outdoors while she talked with other family members. When she allowed police inside a few minutes later, Gowan was in the living room and admitted he had been hiding underneath a waterbed. Gowan was advised of his right to remain silent, admitted to police he had driven the Buick earlier

---

1. The victim was assigned the pseudonym during trial. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (Vernon Supp.1996).

2. Officer Ritchie assisted in the search for Michelle and was advised during the investigation that the suspect in the attack lived in the 2900 block of McGaha.

that morning, and claimed to have stolen a soft drink from a nearby convenience store.

A trace evidence expert testified that dried grass taken from Michelle's hair was similar to that discovered under the bed at the McGaha address. The witness also testified that duct tape recovered from a vacant house near where Michelle was found were similar to duct tape taken from Gowan's tool box and that carpet fibers from the duct tape matched carpet fibers from the van. Additionally, carpet fibers taken from Michelle's clothing matched carpet fibers from the van and fibers found in the vacant house, and two head hairs found in the van matched those from Michelle. The head hairs recovered from the van appeared to have undergone peroxide treatment, and Michelle testified that she had used peroxide on her hair "a month or two" before the assault.

Although Gowan was suspected of committing several assaults, at the guilt-innocence phase of the December 1994 trial, prosecutors only sought to prove that he had committed the October 1993 attack. After the jury convicted Gowan in the assault on Michelle, the State offered testimony from seven other women who said that Gowan had raped them too. This testimony, and that from another woman who said that she saw Gowan outside the sliding glass door of her apartment, was offered during the punishment phase of the trial.

### POINT OF ERROR ONE

In his first point of error, Gowan complains that the trial court erred in refusing to allow the defense to review material in the possession of the State concerning rapes attributed to the "serial rapist" but with which Gowan had not been charged. Gowan contends that investigators believed that all of the rapes were committed by one suspect and that exculpatory material existed in police files on the rapes with which Gowan was *not* charged. He reasons that if there was evidence that he did not commit some of the serial rapes, the exculpatory material in those other files would cast doubt on his alleged guilt in Michelle's assault. At a pretrial hearing on January 18, 1994, the defense asked to review police files and investi-

gative reports on any of the rapes allegedly connected to the "serial rapist."

In an offer of proof, the defense argued that police files on the seven rapes with which Gowan was not charged contained instances where an alleged victim did not identify Gowan in a lineup, where an alleged victim came in contact with Gowan after the assaults and did not recognize him, and where DNA results on comparisons between the "rape kit" and Gowan's blood indicated a donor other than Gowan. The defense also argued that the files would show the police believed that all of the crimes were perpetrated by a single person and that the reports contained FBI profiling and witness and victim statements which would exclude Gowan as a suspect. The trial court denied Gowan's request for access to the records and instead ordered an *in camera* inspection.

■ A defendant in a criminal case does not have a general right to discovery of evidence in possession of the State. *Kinnamon v. State*, 791 S.W.2d 84, 91 (Tex.Crim. App.1990), *overruled on other grounds, Cook v. State*, 884 S.W.2d 485 (Tex.Crim.App. 1994). Decisions involving pretrial discovery of evidence which is not exculpatory, mitigating, or privileged are within the discretion of the trial court. *Id.* Police reports, arrest reports, offense reports, and similar law enforcement documents are not subject to production. *Brem v. State*, 571 S.W.2d 314, 322 (Tex.Crim.App. [Panel Op.] 1978).

■ Gowan relies heavily on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in arguing that he is entitled to exculpatory material. But, *Brady* requires disclosure only of evidence that is both favorable to the accused and material to guilt or to punishment. *United States v. Bagley*, 473 U.S. 667, 674, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481, 489 (1985) (citing *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197, 10 L.Ed.2d at 218). "To invoke *Brady*, the accused must present evidence that: (1) the prosecution suppressed or withheld evidence; (2) this evidence would have been favorable to the accused; and (3) this evidence would have been material to the accused's defense." *Cruz v. State*, 838 S.W.2d 682, 685 (Tex.

App.—Houston [14th Dist.] 1992, pet. ref'd) (citing *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713 (1972)). "Evidence is material *only if* there is a reasonable probability that, *had the evidence been disclosed* to the defense, *the result of the proceeding would have been different.*" *Id.* at 685 (citing *Bagley,* 473 U.S. at 692, 105 S.Ct. at 3388, 87 L.Ed.2d at 489) (emphasis added). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Bagley,* 473 U.S. at 692, 105 S.Ct. at 3388, 87 L.Ed.2d at 489).

■ Gowan argues that he has shown the connection between the charged and uncharged cases, has shown a viable, material, and admissible defensive strategy behind his request, and has made an offer of proof which "indicated how the anticipated evidence would be inconsistent with the defendant's guilt in the case at bar." However, Gowan was tried for and convicted of the assault on Michelle. No extraneous offenses were brought up during the trial on guilt-innocence. Eight extraneous offenses were introduced during the punishment phase of the trial; Gowan had been indicted for six of those eight extraneous offenses.

The State claims, and Gowan does not dispute, that an open file was provided for the rape for which he was tried. Additionally, Gowan does not challenge the State's claim that it provided open files for the extraneous offenses disclosed at the punishment phase of the trial. It appears to us that Gowan had before him the complete files pertaining to the assault on Michelle and the extraneous offenses introduced at punishment. We do not see, under these facts, how files pertaining to the uncharged offenses would have been material to his defense in the trial for the assault on Michelle.

Gowan's argument relies heavily on two assumptions: (1) that all of the rapes were in fact committed by the same assailant; and (2) that the documents pertaining to the assaults with which he had not been charged were exculpatory, rather than merely inconclusive. Only if we accept both of these premises could material clearing Gowan of one of the uncharged rapes cast doubt on his guilt in the assault upon Michelle and others in the alleged series. Gowan is essentially asking this court to make a leap of faith not required by *Brady, Bagley, Moore,* or *Cruz.* We decline to make this leap in a situation where a defendant had full access to all of the offenses introduced at his trial. Point of error one is overruled.

## POINT OF ERROR TWO

Gowan next complains that the trial court erred in denying his motion for new trial based upon prosecutorial misconduct in withholding exculpatory evidence from the trial court's *in camera* inspection. Specifically, Gowan contends that the State withheld from the trial court a report from a DNA expert at GeneScreen which revealed that one semen stain gathered by police during the investigation had a different DQ–Alpha marker than Gowan. During the trial, the court admitted that the State had not provided that particular GeneScreen report for *in camera* inspection.

■■ A three-part test is used to determine whether a prosecutor has violated the Due Process Clause of the Fourteenth Amendment by failing to disclose exculpatory evidence. *Thomas v. State,* 841 S.W.2d 399, 404 (Tex.Crim.App.1992). "Such a violation occurs when a prosecutor 1) fails to disclose evidence 2) which is favorable to the accused 3) that creates a probability sufficient to undermine the confidence in the outcome of the proceeding." *Id.* The error, if any, must be examined in the context of the overall strength of the State's case. *Id.* at 405.

■ It appears that Gowan has met the first prong of the *Thomas* test. If we are to believe the trial court during the exchange with counsel, the trial court had not been provided with a GeneScreen report which indicated that a semen sample from a comforter in one of the rapes had a DQ–Alpha marker different from that of Gowan. But, Gowan cannot meet the second and third prongs of the test. Gowan seems to believe that because the semen stain from another rape did not match his sample it was "favorable to him" and created a "probability sufficient to undermine confidence in

the outcome" of the trial. We reiterate that evidence which may have excluded Gowan as a suspect in some of the uncharged offenses does not necessarily exclude him as a suspect in the assault on Michelle and this previously undisclosed evidence he views as exculpatory is not sufficient to undermine confidence in the outcome of the trial for the assault upon Michelle. Based upon these facts, it was not error for the trial court to deny his motion for new trial as a result of what Gowan calls prosecutorial misconduct in the State's failure to disclose that particular GeneScreen report. Point of error two is overruled.

The judgment of the trial court is affirmed.