

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00411-CR

JOHN R. HOFFMAN                                             APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1273833D

----------

## MEMORANDUM OPINION[1]

----------

Appellant John R. Hoffman appeals from his conviction and life sentence for capital murder. Because we conclude that Hoffman has failed to show the requisite prejudice arising from the State's inadvertent nondisclosure of exculpatory evidence, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. FACTUAL BACKGROUND

On October 2, 2006, nine-year-old Z.H. returned home from school in Fort Worth to find his mother, L.C., brutally murdered in his bedroom. Police arrived and found L.C. lying on the floor of Z.H.'s bedroom nude from the waist down and with severe head trauma. A subsequent autopsy revealed that L.C. had been suffocated to death. The condition of the room led officers to conclude a "violent struggle" had occurred although there was no sign of forced entry into the home. The mattress was out of place such that officers could see that the box spring had bloodstains on it. The walls and carpet also were covered in bloodstains. The walls additionally had yellow stains that were determined to be from pepper spray, a can of which was found in Z.H.'s bedroom.

In L.C.'s bedroom, officers found a black purse and a business-card holder on the bed. The contents of the purse had been dumped onto the bed. No cash was found in the home, and L.C.'s keys were missing. Crime-scene officers collected fingerprints from the scene, took fingernail clippings from L.C., swabbed the stains on the walls, collected a clump of hair from the hallway, and swabbed L.C.'s body. They also collected as evidence the purse and a blanket that had been wrapped around L.C.'s face when Z.H. found her.

On October 3, 2006, Dallas police officers stopped Hoffman after seeing him walk along a freeway and cross an exit lane without looking back to check for exiting traffic. Because an outpatient mental-health and drug-treatment center

2

was approximately one mile away from this area, the officers believed Hoffman could have left there without permission or "may not have [had] full mental faculties." Hoffman told the officers that he had walked from Fort Worth. He had scratches and bruises on his face and crescent-shaped scratches on his arms. Although the officers arrested Hoffman and took him to a Dallas County jail, the record does not explain when Hoffman was released or what the result of the arrest was.

The police tested the DNA samples taken from L.C.'s body and fingernails in an attempt to identify who killed her. The results, which eliminated L.C.'s former boyfriend Darrell Grimes as a suspect,[2] were entered into the combined DNA index system (CODIS). Detective Tom Boetcher, one of the initial responding officers, continued to investigate L.C.'s murder but developed no viable suspects until September 2010 when CODIS identified Hoffman as a possible match to the DNA found on L.C.'s body and fingernails. Boetcher obtained a search warrant to compel a DNA sample from Hoffman. Appellant's DNA matched the DNA found under L.C.'s right fingernails such that the odds of the DNA matching another person were one in 482 quadrillion. The DNA taken from other areas of L.C.'s body, including the DNA from under L.C.'s left fingernails, indicated Hoffman was a possible contributor but not to the extent of

---

[2]Grimes initially was a suspect because he and L.C. had a violent relationship and because L.C. had recently moved to get away from him.

3

the DNA found under her right fingernails. The DNA testing of several samples revealed other DNA contributors, but they were never identified.

## B. PROCEDURAL BACKGROUND

A grand jury indicted Hoffman with murder while in the course of committing or attempting to commit aggravated sexual assault or burglary of a habitation, i.e., capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2014). The State did not seek the death penalty. Before trial, Hoffman filed a motion for production of all exculpatory and mitigating evidence. The record does not reflect that Hoffman ever presented his motion to the trial court or that the trial court expressly ruled on this motion.[3] However, the record does show that the State produced exculpatory and mitigating evidence to Hoffman up until the first day of trial. A jury found Hoffman guilty of capital murder; thus, the trial court sentenced him to life confinement without the possibility of parole on August 28, 2013. *See* Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2014); Tex. Penal Code Ann. § 12.31(b)(2) (West Supp. 2014).

Hoffman filed a motion for new trial alleging that "evidence tending to establish [his] innocence was withheld[,] preventing its production at trial." *See* Tex. R. App. P. 21. Hoffman attached the affidavit of his trial attorney, Fred Cummings, to the motion. Cummings attested that the day after Hoffman was

---

[3]Of course, Hoffman was not required to affirmatively request such disclosure in order to be entitled to it. *See Strickler v. Greene*, 527 U.S. 263, 280–81, 119 S. Ct. 1936, 1948 (1999); 42 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice & Procedure* § 27:27 (3d ed. 2011).

sentenced, the prosecutor, Kevin Rousseau, informed Cummings that Rousseau had failed to produce a January 8, 2013 report that showed Hoffman's DNA was not found on the purse in L.C.'s bedroom.[4]  Indeed, he was specifically "excluded as a potential contributor" to the DNA found on the purse.  Cummings averred that if the State had properly produced this evidence, he would have "further emphasize[d] a lack of evidence that . . . Hoffman was ever in the apartment where the victim was discovered."  *See generally Pena v. State*, 353 S.W.3d 797, 807–09 (Tex. Crim. App. 2011) (holding defendant preserves *Brady* error by raising issue in motion for new trial if nondisclosure not discovered until after jury retires to deliberate).

The motion was referred to a Tarrant County magistrate who held a hearing.[5]  *See* Tex. Gov't Code Ann. §§ 54.656–.658 (West 2013).  At the hearing, Rousseau testified that his failure to produce the report was inadvertent.  The DNA analyst who tested the DNA found on the purse testified that male DNA could not be detected.  A more precise test, however, detected a "minimal amount of male" DNA on the purse.  Further testing on this minimal amount of

---

[4]The report also did not state a conclusion regarding possible contributors to the DNA found on and in the business-card holder.  However, Hoffman does not assert that the report regarding DNA from the business-card holder was material evidence and focuses on the DNA from the purse to support his point on appeal.  We will do likewise.

[5]The record does not contain a referral order from the trial court, but no party objects to the absence of such an order.  *See* Tex. Gov't Code Ann. § 54.657 (West 2013).

5

male DNA excluded Hoffman as a potential contributor. This exclusion, however, was based on the assumption that there was only one contributor to the male DNA found on the purse. If it were assumed that there were more than one contributor to the male DNA on the purse, there would have been "no conclusion" regarding Appellant as a contributor.

The magistrate, in findings of fact and conclusions of law, found that the failure to produce the report was "due to oversight" and that testing of the DNA found on the purse excluded Hoffman as a contributor. *See id.* § 54.658(8)–(9). The magistrate recognized that other DNA evidence introduced at trial linked Hoffman to the DNA found on L.C. and that Cummings had argued to the jury that "there was no evidence linking [Hoffman] to [L.C.'s] apartment, as no such evidence was admitted." The magistrate concluded that based on the totality of the evidence introduced at trial, there was no "reasonable probability that the outcome of this trial would have been different if the untimely disclosed DNA evidence had been put in evidence, or otherwise used by the defense." Thus, the magistrate recommended that the trial court deny the motion for new trial. *See id.* § 54.658(11). The trial court adopted the magistrate's findings and conclusions and denied the motion for new trial. *See id.* § 54.662(b) (West 2013).

## II. DISCUSSION

In a sole point, Hoffman asserts that the trial court erred by denying his motion for new trial because the suppressed report was exculpatory and material. He asserts that the evidence was material because it would have "buttressed" his trial argument that there was no evidence to show he was in L.C.'s home at the time of the murder:

> If the purse was one of the objects of the burglary, and [Hoffman] was excluded as the one [who] touched it, then the evidence tends to be insufficient considering [L.C.'s] letter[6] and the unknown "other" DNA on the body. . . . Boetcher testified on cross-examination that the contents of the purse were dumped on [the bed], presumably by the person who committed the burglary.
>
> . . . .
>
> The purse may have been a source of money, drugs, credit cards and the like. Or it might have contained keys which could have explained how the door was locked from the outside. These scenarios or arguments tend to point to another person and not the defendant as being the assailant *in the apartment*. . . . The lack of physical evidence of [Hoffman] in the apartment is consistent with the purse DNA not being that of [Hoffman]. The letter to her family by [L.C.] before her death predicted her killer. That is also exculpatory.

We review the trial court's denial of a motion for new trial for an abuse of discretion, i.e., whether the trial court's decision was arbitrary or unreasonable

---

[6]Boetcher found a letter written by L.C. in her bedroom. Although Boetcher included in his crime-scene report that L.C. identified Grimes as her killer in the event of her murder, Boetcher admitted that this was a mistake and that he learned of L.C.'s suspicions regarding Grimes during interviews with L.C.'s family and neighbors. Hoffman, however, incorrectly asserts on appeal that L.C. identified Grimes as her possible killer in the letter.

when the evidence is viewed in the light most favorable to the ruling. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

The prosecution violates a defendant's due process rights if it suppresses, either willfully or inadvertently, exculpatory or impeaching evidence that is material. *Banks v. Dretke*, 540 U.S. 668, 691, 124 S. Ct. 1256, 1272 (2004); *Strickler*, 527 U.S. at 280–81, 119 S. Ct. at 1948; *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). The State concedes that it inadvertently suppressed exculpatory evidence. Thus, our only question is whether that evidence was material, i.e., whether there is a reasonable probability that had Hoffman known about the evidence, the outcome of the proceeding would have been different. *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

We evaluate the materiality of suppressed evidence by balancing the strength of the exculpatory evidence against the evidence supporting conviction. *See id.* at 613. This is not a sufficiency-of-the-evidence inquiry but rather one that asks if the undisclosed evidence undermines confidence in the outcome of the trial. *See Kyles v. Whitely*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995); *Gowan v. State*, 927 S.W.2d 246, 251 (Tex. App.—Fort Worth 1996, pet. ref'd). Once again, we emphasize that we are not looking at the effect of the nondisclosure with fresh eyes; rather, we are to defer to the fact-finder—here, the trial court—and view the evidence adduced at the new-trial hearing in the light

most favorable to the trial court's conclusion that the nondisclosure was not material (or did not prejudice Hoffman). *See Banks*, 540 U.S. at 691, 124 S. Ct. at 1272 (holding third *Brady* component of prejudice coextensive with materiality); *Quinn v. State*, 958 S.W.2d 395, 401–02 (Tex. Crim. App. 1997) (emphasizing deferential standard applicable to review of denial of motion for new trial).

The fact that the DNA found on the purse excluded Hoffman as a contributor certainly supported Hoffman's argument that he was not in L.C.'s home at the time of the murder and did not participate in the alleged robbery. However, Cummings repeatedly elicited testimony and argued to the jury that other DNA evidence did not support the State's theory that Hoffman was in L.C.'s home at the time of the murder:

● On cross-examination, Boetcher admitted that there were other, never-identified contributors to some of the DNA samples found in L.C.'s home and that the only evidence linking Hoffman to the crime was the DNA found under L.C.'s right fingernails.

● During closing jury argument, Cummings stated that none of the evidence collected at the apartment by one of the responding police officers—specifically, the purse, the business-card holder, the blanket, bloodstains, fingerprints, and the clump of hair—established that Hoffman was in the home.

● Cummings stated multiple times during closing jury argument that no evidence placed Hoffman in L.C.'s home.

Although Hoffman did not have the benefit of the DNA test from the purse, he was not precluded from urging the conclusion to be reached from that test—that no evidence placed Hoffman in L.C.'s home at the time of the murder. Hoffman

9

recognizes this by asserting in the trial court and now on appeal that the undisclosed evidence would have "emphasize[d]" or "buttressed" the argument he raised at trial. The test results from the purse, therefore, would have been cumulative of other DNA evidence that did not point to Hoffman's presence in L.C.'s home, which mitigates against a finding of materiality. *See Canales v. Stephens*, 765 F.3d 551, 574–75 (5th Cir. 2014) (holding prejudice under *Brady* not shown where undisclosed evidence cumulative of other admitted evidence). Further, the DNA test on the purse, which was found in L.C.'s bedroom and not in the room where L.C. was murdered, does not call into question the facts that Hoffman's DNA was found under L.C.'s right fingernails and that Hoffman had scratches on his face and arms the day after L.C.'s murder. *See Higginbotham v. State*, 416 S.W.3d 921, 926–27 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (finding no materiality under *Brady* arising from undisclosed evidence because the balance of the admitted evidence supporting conviction outweighed exculpatory value of withheld evidence).

## III. CONCLUSION

Giving all due deference to the trial court's findings and conclusions, we conclude that the trial court did not abuse its discretion by concluding that Hoffman did not show that the withheld evidence was material to the trial's outcome and, thereby, denying Hoffman's motion for new trial. We overrule Hoffman's sole point and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 30, 2014

11