

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00231-CR
_____

WILLIAM OWENS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 10F0132-005

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

William Owens was convicted by a Bowie County jury of sexually assaulting his daughter, who was four years old at the time of the offense. The jury assessed punishment of life imprisonment and a fine of $10,000.00. On appeal, Owens alleges the following errors: (1) the State violated the holding of *Brady v. Maryland*[1] by not providing exculpatory evidence; (2) Article 38.072 of the Texas Code of Criminal Procedure, which allows testimony of an outcry witness, was violated; (3) evidence from a nurse who examined the child was not relevant; (4) reversible error occurred when the investigating officer opined the child-complainant was truthful in her accusations; and (5) following the child's recantation of her allegation, the evidence was not sufficient to support the verdict. After reviewing the record and applicable law, and considering the arguments of the parties, we find no reversible error and affirm the trial court's judgment and sentence.

**I.      No *Brady* Violation**

Owens first claims the trial court erred in refusing to require the State to turn over a file on another criminal defendant, in an unrelated case, or in failing to conduct an in camera review of that file. The State is required to provide potentially exculpatory information to the defense. *Brady*, 373 U.S. 83; *Thomas v. State*, 841 S.W.2d 399 (Tex. Crim. App. 1992). The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a prosecutor fails to disclose evidence favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Thomas*, 841 S.W.2d at 404; *see*

---

[1] 373 U.S. 83 (1963).

2

*Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011). "Evidence withheld by a prosecutor is 'material' if there is 'a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different.'" *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Further, the information must be disclosed to the accused in time to put it to effective use at trial. *See Palmer v. State*, 902 S.W.2d 561, 563 (Tex. App.—Houston [1st Dist.] 1995, no pet.). This includes disclosure of any favorable information in the possession of police agencies or other parts of the "prosecutorial team." *Kyles v. Whitley*, 514 U.S. 419 (1995). A *Brady* violation may also occur when a prosecutor fails to disclose evidence that may impeach the credibility of a State's witness where the witness' credibility is material to the disposition of an accused's guilt. *Johnston v. State*, 917 S.W.2d 135 (Tex. App.—Fort Worth 1996, pet. ref'd).

Owens' claim of a *Brady* violation was based on a statement supposedly made to Owens by another inmate while Owens was in jail pending trial. Through his attorney, at a pretrial hearing, Owens claimed Billy Speight, another jail inmate, told Owens that Speight had also been accused of fondling or inappropriately touching Owens' daughter.

The prosecutor responded that she had reviewed the case pending against Speight and that the alleged victim in the Speight case was a male, and "not the child in this case." Owens offered no other evidence or specific argument that the victim in the instant case was also the victim of Speight's alleged offense. The trial court opined that the only way such evidence could be exculpatory as to Owens would be if there was evidence that only one assault occurred, and

3

the victim in Owens' case made two allegations, one against Owens and one against Speight. No such evidence was present here.

A defendant in a criminal case does not have a general right to discovery of evidence in the possession of the State. *See Scaggs v. State*, 18 S.W.3d 277, 294–95 (Tex. App.—Austin 2000, pet. ref'd); *Gowan v. State*, 927 S.W.2d 246, 249 (Tex. App.—Fort Worth 1996, pet. ref'd). Limited statutory discovery has been provided. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2012). The decision about what is discoverable under the statute has long been committed to the discretion of the trial court. *See Whitchurch v. State*, 650 S.W.2d 422, 425 (Tex. Crim. App. 1983) (per curiam).

The trial court, having been presented with nothing that "contradicts or rebuts the allegations against this defendant," found no exculpatory evidence existed. We find that Owens only speculated to the trial court that information or a file on Speight's charge might be material to Owens' case, and the State definitively stated the victims in the two cases were not the same.

Normally, courts will not order the State to produce information under *Brady* based upon a defendant's speculation that the requested information contains exculpatory evidence. *Page v. State*, 7 S.W.3d 202, 206 (Tex. App.—Fort Worth 1999, pet. ref'd); *Gowan*, 927 S.W.2d at 250 (refusing to make "leap of faith" necessary to assume police file on seven unrelated rapes would show rape for which defendant charged committed by another assailant). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109 (1976); *see also Hampton v. State*, 86 S.W.3d 603, 612 (Tex.

4

Crim. App. 2002). Also, there is no *Brady* duty to make available to the defendant things about which he or she is already aware. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). *Brady* only applies when the defense discovers information that was known to the prosecution but unknown to the defense. *Pena*, 353 S.W.3d at 810. *Brady* does not require the State to disclose information to defendants that the State does not have in its possession and that is not known to exist. *Id*.; *see also Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990).[2]

There was no suggestion that anything in the Speight file contained exculpatory or material evidence regarding the charge pending against Owens. The trial court did not err in not requiring the State or its agents to produce the Speight file.[3] We overrule Owens' first point of error.

## II.     Outcry Statute Correctly Applied

In his second and fourth points of error, Owens argues the statute allowing hearsay testimony from outcry witnesses[4] was incorrectly applied. We find no reversible error and overrule these points.

---

[2]Nor does *Brady* require the prosecution to discover information that it does not possess. *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010); *see also Pittman v. State*, 321 S.W.3d 565, 571–72 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (prosecuting county did not have—at time of trial—information that co-defendant had had sexual assault charges previously in California—that information came to light after defendant's trial).

[3]Owens also claims the trial court erred by not conducting an in camera review of the Speight file. While in Owens' motion for evidence favorable to the defense he did ask for an in camera review of any "possibly exculpatory or favorable" knowledge or evidence in the possession of any prosecution witness at the hearing before the trial court, Owens never asked the court to conduct an in camera hearing of the Speight file. However, as there was nothing suggesting the Speight file contained material or exculpatory evidence, we find the trial court did not err in not doing an in camera inspection. We further reject Owens' request to remand the case for an in camera review of the Speight file.

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2012).

5

First, Owens claims that Missy Stout Davison, who was allowed to testify as the State's designated outcry witness, was not the correct outcry witness. Rather, Owens argues either the child complainant's mother or grandmother was the correct outcry witness. The child complainant, Julie,[5] said that she initially told her grandmother and mother that Owens had touched and hurt her. Julie, though, testified she did not tell her family members details of the sexual assault; she said she told details to Davison.

In child sexual abuse cases, Article 38.072, Section 2 of the Texas Code of Criminal Procedure provides for the admission of hearsay statements describing the offense that are made by the child victim, who is fourteen years or younger, to the first person eighteen years or older. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). To qualify as a proper outcry statement, the child must have described the alleged offense in some discernible way and must have more than generally insinuated that sexual abuse occurred. *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). The proper outcry witness is the first person to whom the child described the offense in some discernible manner. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (outcry must be more than general allusion of sexual abuse).[6]

We review the trial court's decision to admit testimony from an outcry witness for an abuse of discretion. *Tear v. State*, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet. ref'd);

---

[5]The State's indictment used the pseudonym Julie Mae for the child complainant; we will shorten the pseudonym to Julie.

[6]The proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense. *Thomas v. State*, 1 S.W.3d 138 (Tex. App.—Texarkana 1999, pet. ref'd); *see also Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd).

*Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (trial court has broad discretion in deciding proper outcry witness); *see Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will not reverse on appeal unless the trial court's decision is outside the zone of reasonable disagreement. *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd). Owens claims Davison was not the proper outcry witness because the child made statements to her mother and grandmother. But the child testified that she did not tell her mother and grandmother where Owens had touched her—she did tell that information to Davison. Julie said she just told her family members that Owens had hurt her. Nora Mitchell, Julie's caretaker who, by the time of trial, was the conservator of the child, said the mother and grandmother asked Mitchell what Owens had done: "[T]hey [mother and grandmother] didn't know what he had done." This supports Julie's statement she had not given details to those family members.

There was nothing in the record indicating that the child told specifics of the abuse to anyone before Davison; the child specifically testified that she had not told details to her family members, but did tell Davison. Additionally, investigating officer Gisela Looney said she had not interviewed the child's mother because the mother had no pertinent information. There was no abuse of discretion for the trial court to find that Davison was the proper outcry witness.

## III.   State's Outcry Notice Was Sufficient

In his fourth point of error, Owens complains the pretrial notice given by the State was improper or inadequate. In order to invoke the statutory exception to the prohibition on admitting hearsay, the State must notify the defendant of its intent to offer the evidence, provide

the name of the outcry witness, and provide a summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1). The purpose of these requirements is to avoid surprising the defendant with the introduction of outcry hearsay testimony. *See Gay v. State*, 981 S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). To achieve this purpose, the written summary must give the defendant adequate notice of the content and scope of the outcry testimony. *Davidson v. State*, 80 S.W.3d 132, 136 (Tex. App.—Texarkana 2002, pet. ref'd). The notice is sufficient if it reasonably informs the defendant of the essential facts related in the outcry statement. *Id.*

Owens' complaint is two-fold: first, the State filed a notice which listed Owens' last name as Hudson; second, the summary of the proposed outcry witness' testimony—that the child said Owens put his fingers in the child's vagina—was unclear as to whose fingers were then moved.

The State's first notice, filed on May 16, 2011, said the State would call Missy Stout (the first reference to the witness did not include her married name) to testify the child told "Missy Stout Davison that William Owens **Hudson** had inserted his finger in her 'tutu', meaning her vagina and moved **her** fingers in a circular motion." (Emphasis added.) The next day, the State filed another notice, dropping the "Hudson," but keeping the same language regarding movement of fingers. The inaccuracy of the witness' name was cured.

Owens argues that the wording of the notice was unclear as to whose fingers allegedly were moved during the offense. First, it is possible to read the notice as saying Davison would testify that Julie told Davison the defendant put his finger in Julie's vagina, and Julie then

8

showed Davison how he moved his finger: i.e., "Owens had inserted his finger in [Julie's] . . . vagina and [Julie] moved her fingers in a circular motion," demonstrating the movement to Davison. Davison testified to the jury, "I believe actually her wording was he spinned [sic] his finger in her tutu . . . if I recall, with the doll, she -- she showed or maybe with her hand she showed how that actually happened." The child testified at trial Owens moved his finger around in her tutu, and it hurt.

Second, the notice describes a completed offense by informing Owens the proposed outcry witness would testify the child told her that Owens digitally penetrated her (the child). This is the offense for which Owens was indicted, and if proved beyond a reasonable doubt, would constitute the offense of aggravated sexual assault.[7] Notice of an outcry witness must give the defendant adequate notice of the content and scope of the outcry testimony. *Id.* The notice is sufficient if it reasonably informs the defendant of the essential facts related in the outcry statement. *Id*. This is not a situation where the trial testimony of the outcry witness exceeds the scope of the pretrial outcry notice.[8] We find that because the notice described the offensive conduct which corresponded with the outcry witness' testimony, it was sufficient to comply with the statute.

---

[7]*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2012) (offense consists of intentional or knowing penetration of child's sexual organ by any means).

[8]*See, e.g., Wheeler v. State*, 79 S.W.3d 78, 84 (Tex. App.—Beaumont 2002, no pet.) (holding trial court erred in admitting testimony not described in Article 38.072 notice); *Gay*, 981 S.W.2d at 866; *Biggs v. State*, 921 S.W.2d 282, 285 (Tex. App.—Houston [1st Dist.] 1995) (Texas Court of Criminal Appeals granted discretionary review in *Biggs* without issuing written opinion, vacated court of appeals' judgment, and remanded case to lower court to conduct factual sufficiency review. *See Biggs v. State*, No. 01-93-01008-CR, 1997 Tex. App. LEXIS 5640, at *1 (Tex. App.—Houston [1st Dist.] Oct. 30, 1997, pet. ref'd) (not designated for publication)).

Even if the notice was found insufficient to meet the requirements of Article 38.072, Owens made no claim to the trial court that he was surprised by any difference in the written notice and the testimony offered at the 38.072 hearing or at trial. Any error in the substance of an outcry notice is harmless where there is no indication the defendant was surprised by the outcry testimony. *See Zarco v. State*, 210 S.W.3d 816, 832–33 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

There is no showing that Owens was surprised by the State's outcry witness testimony, or that he was denied notice of the State's intent to present such evidence or a summary of that evidence. We overrule the fourth point of error.

## IV.    Testimony of Sexual Assault Nurse Examiner

The State presented sexual assault nurse examiner (SANE) Kathy Lach, who examined Julie during the course of the State's investigation. Lach said that she found no physical evidence of trauma to confirm Julie's allegation and that such an absence of findings is common. Owens complained this evidence was not relevant and should have been excluded and makes that argument on appeal. The trial court overruled Owens' objection and allowed the testimony. We find no error.[9]

"An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld."

---

[9]Owens does not argue that Lach's testimony should have been excluded because it was hearsay. We will therefore not discuss the hearsay exception for medical diagnosis or treatment that generally applies in this circumstance. *See* TEX. R. EVID. 803(4).

*Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Owens claims Lach's testimony was not relevant, and thus the trial court abused its discretion in admitting it. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. "All relevant evidence is admissible, except as otherwise provided by . . . these rules. . . . Evidence which is not relevant is inadmissible." TEX. R. EVID. 402. If there was any correct theory under which the evidence could have been admitted, we will uphold the trial court's ruling. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997).

Lach told the jury she conducted a sexual assault examination of Julie and found no evidence of injury or medical trauma. Lach said about ninety percent of the time, on sexual assault examinations, no trauma is found. She also said that because she was examining Julie more than ninety-six hours after the alleged assault, Lach did not expect to find evidence of trauma.[10] Other than looking for evidence of injury or trauma, another reason for conducting the examination, said Lach, was to reassure the child that they were okay, that they would be "normal" after the abusive events: "[W]e are there to reassure the child and let them know that their body is okay." She also said some children harm themselves after a sexual assault, and the examination allows a medical person to check for any self-inflicted injuries.

---

[10]The exact date of the alleged abuse cannot be determined from the record. It appears the child made the initial complaint to her grandmother or mother in March 2008; Davison interviewed the child on March 27. The investigating police officer began working on the case about April 8, and the sexual assault examination was conducted on April 15.

11

Other considerations qualify Lach's testimony as relevant: the State could have produced Lach's testimony to describe the investigation. The investigating police officer, Looney, had already testified that she arranged the sexual assault examination; the presence of physical or DNA evidence was "case by case," and there could be injuries in instances of digital penetration. Davison, the forensic interviewer, also said that ninety percent of such cases reveal no physical injury or medical trauma. Lach was deemed an expert in sexual abuse examinations, and so her expert testimony could be helpful to the jury. *See* TEX. R. EVID. 702; *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Lach's testimony could have been useful to the jury to elucidate the testimony of Looney and Davison, as well as explain why physical evidence would not necessarily be present on the body of a sexual assault complainant.

Owens cites *Salinas v. State*, 166 S.W.3d 368 (Tex. App.—Fort Worth 2005, pet. ref'd), where the reviewing court found error in admission of a pediatrician's testimony that she diagnosed sexual abuse based on the history given by the child, describing the abuse. The doctor[11] found no physical evidence of the digital anal penetration described by the child, but concluded the child was sexually assaulted based entirely on the child's report. The *Salinas* court found this testimony essentially vouched for the child's credibility and truthfulness. While the doctor "could legitimately testify that she found no evidence of sexual abuse," it was an abuse of discretion to allow her to testify to her diagnosis of sexual abuse based only on the child's history. *Id.* at 371. Here, Lach merely reported the events of the examination and her

---

[11]The doctor did not examine the child until four and a half months after the report of abuse, although this factor did not enter into the reviewing court's analysis. *Salinas*, 166 S.W.3d at 371–72. The *Salinas* court found the error harmless. *Id.* at 372.

12

clinical findings; she did not offer an opinion as to whether the child had been sexually assaulted and did not comment on the child's ultimate credibility or veracity, as occurred in *Salinas*. *Cf. Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993).

Owens also argues that Lach's testimony improperly bolstered Julie's testimony. Although Julie had not yet testified at the time of Lach's testimony, in opening argument both the State and defense alluded to Julie's having recanted her initial allegation. Prior to Lach taking the stand, Davison had testified to Julie's description of the sexual assault, and Lach's testimony corroborated the allegations. Relevant evidence does not constitute improper bolstering simply because it corroborates testimony of an earlier witness. *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Admission of Lach's testimony was within the zone of reasonable disagreement, and hence the trial court did not err in allowing it.

## V. Instruction to Disregard Cured Officer's Testimony

When Officer Looney testified, she was asked by the State to explain her procedure for securing an arrest warrant. In the course of her answer, Looney stated she believed Julie had been telling the truth in her allegation, and this belief led to police securing a warrant for Owens' arrest. Owens objected to Looney impermissibly testifying to the complainant's truthfulness;[12] the trial court overruled Owens' request for a mistrial and instructed the jury to disregard Looney's statement.

---

[12]*See Schutz*, 957 S.W.2d at 59; *Yount*, 872 S.W.2d at 708.

In answer to the prosecutor's question about how Looney procures an arrest warrant, Looney testified,

> We have to list the details that fit that particular crime, which was aggravated sexual assault, that we had the elements. We did it based on the child -- because Mr. Owens could not be located and the roommate wasn't cooperative, all I had to go on at the time was based on her interview and her SANE exam and what she told the SANE nurse.
> And for a four-year-old, in my experience, as detailed as she was and advanced as she was for her age, we felt that she was telling the truth, so we got a warrant.

Owens objected and moved for a mistrial. The trial court denied this request[13] and instructed the jury to disregard the testimony.[14] The trial court thought that the error was curable with an instruction to disregard and that Looney's statement had not "interject[ed] anything unduly prejudicial to the jury because I think that it's reasonable to assume, and most people do, that an investigating officer believes the victim during the course of the investigation." Owens acknowledges an instruction to disregard improper evidence is usually a sufficient remedy, but he also points out such situations are determined on a case by case basis. He argues the trial court's instruction was not sufficient here because the "State's entire case against Owens was based upon victim's testimony that Owens had touched and penetrated her vagina with Owens'

---

[13]Owens does not complain of the denial of a mistrial; his appellate complaint is that Looney's testimony impermissibly bolstered Julie's accusation.

[14]The instruction was:

> Ladies and gentlemen, prior to the break, you heard a statement from the witness to the effect that she believed the child was telling the truth. It doesn't matter what the witness or anyone else thinks about whether they believe the child was telling the truth. What matters is what you believe.
> You twelve jurors and one alternate are the sole and exclusive judges of the credibility of the witnesses and the weight to be given to their testimony. So I'm going to instruct you to disregard the statement and give it no weight or consideration in your deliberations.

14

finger," and she recanted that allegation in her testimony (the recantation is the subject of the final point of error, below).

Owens claims Looney's statement unfairly bolstered the State's case. We generally presume the jury follows the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). When evaluating the effectiveness of a curative instruction to disregard, we look to "the nature of the [improper comment]; the persistence of the prosecutor; the flagrancy of the violation; the particular instruction given; the weight of the incriminating evidence; and the harm to the accused as measured by the severity of the sentence." *Searcy v. State*, 231 S.W.3d 539, 549 n.10 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Roberson v. State*, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet. ref'd)). Here, there was no indication the State purposefully elicited Looney's statement, and the State did not revisit the comment in its questioning of Looney or in argument.[15] The trial court expressly told the jury that it was to disregard the statement and that its determination of the facts of the case was paramount. Except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and where the conduct is of such a character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds, a prompt instruction to disregard will ordinarily cure any error. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam); *Livingston v. State*, 739 S.W.2d 311 (Tex. Crim. App. 1987). We find the trial court's

---

[15]With the jury excused, the prosecutor told the trial court that she in "no way" had been trying to elicit Looney's statement that she felt Julie was telling the truth; rather, she had been seeking to elicit testimony about obtaining the warrant for Owens.

15

instruction effective to cure the impermissible testimony. We overrule Owens' fifth point of error.

## VI. Conflicting Statements by Victim

Owens urges that the victim recanted her testimony on cross-examination, which rendered the evidence legally insufficient to support the conviction. We disagree and overrule the sixth point of error.

On direct examination, Julie, who was eight at the time of the trial, said that in March 2008, when she was four, she did not live with her father, Owens, but visited him. She said that Owens touched her "tutu," her "private area," with his finger. He moved his finger inside her "tutu" and it hurt. It is not clear with whom Julie lived at that time, but subsequent to this event she lived with Nora Mitchell, a woman who testified at trial that she had "custody" of Julie and her brother. Julie said that when she lived with Mitchell, she was no longer afraid of Owens and that circumstance led her to say the abuse had not happened. She testified that she said this because she "didn't want [Owens'] family to be mad at" her and that she was afraid Owens would be sent to jail. After acknowledging this, Julie again told the jury that Owens had touched her inside her "tutu" and that it "hurt."

On cross-examination, counsel asked Julie if she told Miss Missy that this happened in the bedroom when she was unclothed, but told "Nana" that it occurred when she was taking a bath "and that's when Daddy touched you." Julie agreed. Julie testified that her statement to Nana that it happened while in the bathroom was not true. Julie was asked if, after she went to live with Miss Nora, she could tell her the truth. The following occurred:

16

Q.      [By defense counsel] And the truth is, is that this didn't happen, did it?

A.      [By Julie] (No response.)

Q.      It's okay, Sweetheart.

A.      No, sir.

Q.      You told Miss Nora that you told that story because your mama and Nana told you you had to tell that story, didn't you?

A.      Yes, sir.

Q.      You didn't want to tell that story anymore, did you?

A.      No, sir.

Q.      Because that story wasn't true, was it?

A.      No, sir.

On redirect examination, Julie again said the version she had told Davison—that Owens touched her—was "what happened." When the prosecutor asked Julie about the questions and answers on cross-examination, Julie said "they" wanted her to tell a version of the story where the touching occurred in a bathtub. From the context of the questions on cross- and direct examinations, it appears "they" refers to Julie's mother and grandmother.

It is not readily apparent from the questions asked and from Julie's answers if, when she answered "no" to the question "that story wasn't true, was it," whether the "story" referred to was the place of the occurrence of the assault (bedroom v. bathroom) or whether she was answering that no assault took place—particularly given the back and forth redirect and cross-examination where she continued to state that the assault occurred, but that this "story" was

17

wrong.  At most, this is a conflict in the child's testimony.  In a legal sufficiency review,[16] we must defer to the jury's ability to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence.  *Hooper*, 214 S.W.3d at 13.  Owens acknowledges the jury may believe or disbelieve all or part of any witness' testimony, but he directs us to the following:

> Rational jurors may not utterly disregard undisputed evidence without a sensible basis for thinking it unreliable any more than they may simply assume a critical part of the proof without evidence having an inclination to confirm it.  [*Saunders v. State*,] 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).

It is true that Julie at one time recanted her allegation; she also offered reasons for that recantation and context for when the recanting statement was initially made.  As for the conflicting testimony in court, her final testimony was clearly that the abuse did in fact occur.  The fact that a witness makes contradictory or inconsistent statements does not destroy his or her testimony as a matter of law.  *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970) (evidence legally sufficient to support aggravated assault conviction based on prosecuting witness' testimony even though testimony inconsistent); *Reed v. State*, 991 S.W.2d 354, 360 (Tex. App.—Corpus Christi 1999, pet. ref'd) (evidence legally and factually sufficient to support

---

[16]In evaluating the legal sufficiency of the charged offense, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented.  *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

aggravated sexual assault of child conviction based on victim's testimony even though testimony contradictory). The weight to be given contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Reed*, 991 S.W.2d at 360. As fact-finder, the jury is entitled to judge not only the credibility of each witness, but to accept some portions of a witness' testimony and reject other portions. *See Hughes v. State*, 897 S.W.2d 285, 289 (Tex. Crim. App. 1994).

In addition to Julie's testimony, Davison testified, as the outcry witness, that Julie told Davison that Owens touched Julie inside her vagina with his finger. Julie told Davison the touching hurt and she was crying when it occurred. Davison said the child was consistent in the details she gave about the abusive contact and demonstrated on anatomically correct drawings that her "tutu" referred to her vagina. SANE Lach also testified that Julie told her that Owens touched her inside her vagina with his finger. Davison and Lach both testified that in about ninety percent of sexual assault medical examinations, no physical evidence of the assault is detected.

We defer to the jury's resolution of the conflict in Julie's testimony. A child victim's testimony is sufficient to support a conviction for sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2012); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978). Considering the record as a whole, we find the evidence sufficient to support the jury's verdict. We overrule the sixth point of error.

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     August 2, 2012
Date Decided:       September 19, 2012

Publish