

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00610-CR

Joe A. **GOMEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR4656
Honorable Ron Rangel, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Jason Pulliam, Justice

Delivered and Filed:  September 23, 2015

AFFIRMED

Joe A. Gomez was charged with aggravated sexual assault of a child and, after hearing evidence, a jury found him guilty of the offense. Gomez appeals his conviction contending the evidence is legally insufficient to prove he committed the offense of aggravated sexual assault of a child. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gomez was indicted for committing aggravated sexual assault on S.C. He pleaded not guilty and the case went to trial before a jury.

The victim, S.C., was fifteen at the time of trial. She testified that when she was about six or seven years old, she was living with her mom, her mom's then-boyfriend, Oscar, and her three brothers. At the time, she shared a room with two of her brothers. The appellant, Gomez, is her mom's cousin, and he would come to family parties about once a week at her house.

According to S.C., when she was six or seven years old, Gomez molested her. The first time it happened, she was asleep in her room and, when she woke up, Gomez was next to her on the bed and had his hands in her pants. He was touching her vagina, and he put his finger inside her vagina. She started crying and then went to her mom's room. Neither of her brothers was in the room at the time. They were in the front room watching television. She told her mom what had happened, and her mom told Gomez to leave. This happened about six times, but the only time he put his finger inside her vagina was the first time. Each time she went to her mom and told her what happened. S.C. did not tell anyone else at the time because she was scared and did not know what to do. She did eventually tell the police because she did not want the same thing to happen to her little sister. Just before going to the police, S.C. also told her mother's current boyfriend, Adrian, about what had happened with Gomez.

On cross-examination, S.C. recalled talking to a police officer, but could not recall how many times she told him the molestation had happened. She could not explain why she told him it only happened two times instead of five or six times. She also confirmed that in a sworn DVD recorded statement, she told the police that the only time Gomez put his hand inside of her was "like the third time." And she told the police her brothers were in the room when the molestation happened. She explained the inconsistencies between what she reported to the police officer and what she told the jury by saying that she started remembering things and by talking about it more, "it started coming back to [her]." S.C. admitted on cross-examination that at about the same time she reported Gomez's molestation she was having trouble at school, at home, and in juvenile.

There were discussions between herself and her mother about her going to live with her dad, but she continued to live with her mother.

S.C.'s mother, Jeanette, testified at trial that at the time S.C. first reported an incident with Gomez, S.C. had her own bedroom. She never shared a bedroom with her brothers. On one occasion, S.C. came to Jeanette's door, crying and knocking. When Jeanette opened the door, S.C. said Gomez was either trying to touch her or he did touch her—Jeanette could not remember which one S.C. reported to her. Jeanette went to S.C.'s room and saw Gomez in the room. She asked Gomez why he was there because he had no reason to be in the room. Jeanette told her then-boyfriend, Oscar, to take Gomez home. Jeanette did not call the police because she was scared, shocked, and did not know what to think or what to do. She was afraid her family would think she and S.C. were lying and that Gomez would try to deny it. After that, she did not allow Gomez to be around S.C. anymore. He was not allowed to stay in her house and when he came to family gatherings, S.C. was always with Jeanette or would go to a friend's house. According to Jeanette, S.C. only told her about Gomez touching her inappropriately on that one occasion. When S.C. made the report to police, S.C. told Jeanette for the first time it had happened more than once.

After hearing the evidence, the jury convicted Gomez of aggravated sexual assault. Gomez was sentenced to ten years in the Texas Department of Criminal Justice—Institutional Division. Gomez now appeals his conviction.

## DISCUSSION

In a single issue, Gomez argues the evidence is legally insufficient to prove he committed the offense of aggravated sexual assault of a child. The Texas Penal Code provides that a person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of a child younger than 14 years of age by any means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2014). In a challenge to the

sufficiency of the evidence, we review all of the evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

In support of his argument, Gomez points out various inconsistencies in S.C.'s testimony. Specifically, he argues that S.C. reported to her mother one version of the offense, which conflicted with the version she reported to the police officers, which likewise conflicted with the version she told the jury. Further, Gomez points to a lack of forensic evidence to prove the offense. Also, in support of his argument, Gomez focuses on both Jeanette's and S.C.'s difficulties in remembering details of the events and the conflicts in their testimony. And, finally, Gomez highlights the difficulties S.C. was having at home, in school, and in juvenile and the fact that her mother was seeing a new boyfriend at the time she reported the incidents. Gomez contends that these difficulties gave S.C. a motive to direct attention away from herself and towards him. According to Gomez, after reviewing all the evidence in the light most favorable to the verdict, no rational factfinder could have found that each element of the offense was proven beyond a reasonable doubt.

In a legal sufficiency review, we must defer to the jury's ability to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence. *See Owens v. State*, 381 S.W.3d 696, 708-09 (Tex. App.—Texarkana 2012, no pet.) (stating we defer to the jury's ability to resolve conflicts where there is a conflict in child's testimony regarding sexual assault). "The fact that a witness makes contradictory or inconsistent statements does not destroy his or her testimony as a matter of law." *Id.* at 709. "The weight to be given contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of

credibility and demeanor." *Id*. The jury, as factfinder, judges not only the credibility of each witness, but is also entitled to accept some portions of a witness's testimony and reject other portions of the testimony. *Id*. Moreover, forensic evidence is not necessary for an aggravated sexual assault conviction. *See Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (finding physical evidence not required when complainant provides ample testimony to establish sexual assault occurred).

In this case, the jury, as the factfinder and judge of the credibility of the witnesses' testimony, heard the conflicting evidence and resolved any conflicts in favor of S.C.'s testimony that Gomez sexually assaulted her. We defer to the factfinder's resolution of the conflicts and, therefore, uphold the jury's verdict of conviction. The trial court's judgment is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH