**Affirmed and Opinion Filed September 20, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00983-CR**
**No. 05-19-01002-CR**
**No. 05-19-01003-CR**

**EDUARDO ISAI REYES-BONILLA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1834785-P, F-1834298-P, and F-1834784-P**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Myers, and Justice Partida-Kipness
Opinion by Justice Partida-Kipness

Appellant Eduardo Isai Reyes-Bonilla appeals his convictions on one count of continuous sexual abuse of a child under the age of fourteen years old and two counts of sexual assault of a child. In a single issue, Reyes-Bonilla challenges the legal sufficiency of the evidence to support his convictions. We affirm.

## BACKGROUND

The complainant, S.L., was a sixteen-year-old freshman at Macarthur High School in Irving, Texas when she made her outcry. On December 15, 2016, the school's truancy officer met with S.L. to discuss her recent and excessive absences.

S.L. became distressed during the meeting, so the truancy officer referred her to school counselor Juan Herrera. When S.L. went to Herrera's office, he asked her why she was missing school and if something was going on. During their conversation, S.L. disclosed information triggering Herrera's mandatory reporting duty. Herrera had just been through training about human trafficking and sexual abuse, and missing school is one of the "red flags that something was not right." According to Herrera, S.L. was crying, scared, and emotional when she told him about the incident he decided to report. S.L. testified that she remembered telling Herrera about something inappropriate happening at home. Herrera reported the information to the school resource officer, Jason Maguire. Based on his training, Maguire confirmed an outcry without further questioning, immediately took S.L. to the Irving Family Advocacy Center, and completed a report.

Yesenia "Jesse" Gonzalez[1] conducted the forensic interview of S.L. During the interview, S.L. disclosed that her stepfather, Reyes-Bonilla, had touched her inappropriately from when she was seven years old until she was fifteen. S.L. disclosed the following incidents of abuse to Gonzalez:

- When S.L. was seven, Reyes-Bonilla began to rub her vagina on top of her clothes when she was asleep in the same bed as her brother and Reyes-Bonilla.

- When S.L. was eleven, she got in trouble for having Facebook. Reyes-Bonilla spanked her with a belt. Later, he went into S.L.'s room, grabbed her aggressively, rubbed her vagina, and put his

---

[1] After a sub rosa hearing, the trial court designated Gonzalez as the outcry witness for all of the allegations.

–2–

fingers inside of her vagina. Reyes-Bonilla then got on top of S.L. and put his penis in her. She told Gonzalez that she saw blood on the sheets afterward. The next morning, they acted like nothing happened and Reyes-Bonilla bought doughnuts for the family.

- When S.L. was twelve, Reyes-Bonilla came into her bedroom while she was sleeping. He raised her skirt, and started to touch on her vagina. When her mother unexpectedly came home and saw Reyes-Bonilla touching S.L., her mother grabbed at S.L.'s hair and then left with Reyes-Bonilla. When they returned home, S.L.'s mother acted like nothing had happened and cooked dinner.

- When S.L. turned fifteen, Reyes-Bonilla told S.L.'s mother that he wanted to be with S.L. when she became of age. He then moved out but would come over when S.L.'s mother was working and have sex with S.L. She described "sex" as Reyes-Bonilla putting his penis in her vagina. She also told Gonzalez that Reyes-Bonilla would ejaculate on her stomach.

According to Gonzalez, S.L. provided sensory details during the interview, freely disclosed the information to Gonzalez, and was consistent throughout the interview. S.L. disclosed feeling scared and knowing it was wrong, but described having "goose bumps" during one incident when he touched her vagina and feeling physically "satisfied" during another incident. S.L. told Gonzalez that she had told a friend about what had happened. She also told Gonzalez that her last contact with Reyes-Bonilla occurred the morning of the forensic interview when Reyes-Bonilla sent her a picture of the two of them kissing.

Gonzalez testified that she saw S.L. speaking to her mother when Gonzalez went to get S.L. for the interview. Gonzalez noticed that S.L.'s mother appeared upset, so she asked S.L. what she and her mother were talking about. S.L. told

Gonzalez that she told her mother that she had disclosed the abuse, and her mother told her that she needed to tell "all the truth including her own part in it."

Six days after the initial interview, on December 21, 2016, Gonzalez set up a second interview with S.L. because it was reported that S.L. was recanting. Gonzalez told the jury that when she conducts a recant interview, she first finds out everything that has occurred since the first interview, including how the family reacted to the complainant's outcry, whether the complainant's mother was mad or crying, whether siblings were blaming the complainant for not being able to see the accused parent, and if the outcry had other unintended consequences, such as financial concerns. After gathering that information, Gonzalez asks the complainant to explain why she is there. Gonzalez followed that protocol here. During her second interview with S.L., Gonzalez learned that the reaction and feelings of S.L.'s mother as well as other consequences not anticipated by S.L. were at play, such as S.L.'s concern for her siblings and fear they would be taken away. According to Gonzalez, S.L. came to the second interview saying that she wanted to come in and take it all back and told Gonzalez about all of the unintended consequences that resulted from her outcry. But after exploring those unintended consequences with Gonzalez, S.L. reaffirmed that what she told Gonzalez in the initial forensic interview was true. S.L. also maintained during the second interview that she was having an ongoing sexual relationship with Reyes-Bonilla that began when she was fifteen, and her mother was aware that S.L. was having sex with Reyes-Bonilla.

–4–

In January 2017, S.L. began a series of six counseling sessions with Idalie Beyer at the Irving Family Advocacy Center. During those sessions, S.L. told Beyer about trauma incidents and sexual abuse by her stepfather when he lived with S.L. and her family. S.L. told Beyer that the abuse began when she seven and then there were gaps between abuse. S.L. reported that another incident occurred when S.L. was twelve. She also told Beyer that when S.L. was fifteen, she initiated contact by texting Reyes-Bonilla. That contact began as text messages then moved to physical contact and later a physical relationship that became sexual in nature. Reyes-Bonilla told S.L. during that time that no other man would love her the way he loved her and that she belonged to him because she lost her virginity to him. S.L. thought the relationship was consensual because she initiated contact.

S.L. also reported to Beyer that she was feeling guilty but also relieved for disclosing the abuse. However, S.L. was realizing the unforeseen and unexpected consequences from disclosing. For example, after S.L.'s outcry, the department of child protective services denied Reyes-Bonilla visitation with his daughters who are S.L.'s younger half-sisters. After she disclosed and Reyes-Bonilla was not allowed to see his daughters, she had to take on more responsibility to help care for her younger siblings. S.L. reported feeling a lot of pressure and a lot of guilt because she felt like that was her fault, and she told Beyer that she felt like she needed to go back on what she had said about Reyes-Bonilla because of those consequences and her feelings of guilt. S.L. did not want to be blamed for taking her little sisters' father

away. S.L. also told Beyer that S.L.'s mother was very frustrated and angry that she had to take time off from work to bring S.L. to therapy, which caused financial strain on the family, and her mother minimized the abuse she had endured. S.L. felt guilty and ashamed. She also reported having nightmares recalling memories of the abuse and said she feared that she might have to go with Reyes-Bonilla and stay with him. Beyer testified that she had the impression that S.L. underreported and was marginalizing her symptoms or feelings on the diagnostic assessments Beyer conducted.

Beyer further testified that she has seen situations where a person recants true incidents of abuse because they see unexpected consequences after their outcry, feel guilty for how their family is affected, or even fear that they will get in trouble. During her sessions with Beyer, S.L. said she had recanted to protect her family. Beyer told the jury that it would not surprise her that S.L. was recanting at trial because S.L. was forthcoming during the therapy sessions about her fears and stresses, and S.L. would have to confront many of those emotions again at trial. Beyer stated that other factors could also be fueling S.L.'s recantation, such as loyalty to her mother, manipulation by the perpetrator, seeing the perpetrator again, and not wanting to be blamed by her siblings for going against the perpetrator.

At trial, S.L. testified that she remembered telling Herrera, Gonzalez, and Beyer about the incidents of abuse to which they testified. Those incidents included Reyes-Bonilla rubbing her vagina in the family bed, the Facebook incident, Reyes-

–6–

Bonilla putting his penis in her after the Facebook incident and S.L. seeing blood on the bed, her mother walking in and seeing Reyes-Bonilla with his hand inside S.L.'s vagina, and S.L. having sex with Reyes-Bonilla when she was fifteen. Although she was consistent when she disclosed those incidents to Herrera, Gonzalez, and Beyer and conceded that she told the prosecutor a month before trial that each of those incidents occurred, S.L. insisted at trial that she lied to them, and Reyes-Bonilla never sexually assaulted her.

S.L. testified over the course of two days. Following her first day of testimony, which included cross-examination in which she insisted Reyes-Bonilla never sexually assaulted her, the prosecutor and a detective from the district attorney's office spoke with S.L. Detective Ann Barnes testified that during that meeting, S.L. said she was nervous and confirmed that her mother knew about the abuse all along. S.L. also told the prosecutor and Barnes that all of the different incidents of abuse she disclosed to them before trial did happen and were true. According to Barnes, S.L. was very emotional, crying, and could barely talk.

Reyes-Bonilla presented no witnesses during the guilt-innocence phase of trial. The jury found Reyes-Bonilla guilty on all three counts and sentenced him to thirty-five years' confinement on the continuous sexual abuse charge and ten years' on each of the sexual assault counts. The trial court overruled Reyes-Bonilla's motion for new trial and this appeal followed.

## STANDARD OF REVIEW

A challenge to the sufficiency of the evidence is evaluated under the standards established in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We review the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 894–95. This standard of review for legal sufficiency is the same for both direct and circumstantial evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We defer to the trier of fact's resolution of any conflicting inferences that are raised in the evidence and presume that the trier of fact, in this case the jury, resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 894. We defer to the trier of fact to "fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (quoting *Jackson*, 443 U.S. at 319). We will uphold the verdict unless a rational factfinder must have had reasonable doubt with respect to any essential element of the offense. *Jackson*, 443 U.S. at 319–20; *Brooks*, 323 S.W.3d at 899. The State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *Wise*, 364 S.W.3d at 903. Rather, we consider only whether the inferences necessary to establish guilt are reasonable based upon the cumulative

force of all the evidence when considered in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 13.

## ANALYSIS

In a single issue, Reyes-Bonilla argues the evidence is legally insufficient to support the verdict because S.L. recanted her initial outcry, told the jury that she lied to authorities when she made her outcry, and testified that Reyes-Bonilla did not sexually assault her. We disagree.

S.L. was consistent in her descriptions of the incidents of abuse to Herrera, Gonzalez, Beyer, Barnes, and the prosecutor. She was also consistent in how she described her feelings of guilt and fear and the unintended consequences of her outcry. S.L. also testified that her mother reacted negatively to S.L.'s disclosures. S.L. told the jury that after the forensic interview, her mother told her that she should not have told the interviewer everything. Her mother cried the whole way home from the advocacy center, remained very upset the whole evening, would not eat dinner, and became sick that evening. S.L. testified she had never seen her mother that upset before. Her mother did not speak to S.L. on the drive to school the next day, which was a Friday, continued to cry throughout the weekend, and became sick on Sunday. S.L. recanted the following Wednesday, just six days after her outcry. S.L. remembered saying that she was tired and "wanted her mom not to be sad anymore."

The jury as the trier of fact was the judge of the credibility of the witnesses and could choose to believe all, some, or none of the testimony presented. *Wise*, 364

S.W.3d at 903; *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). A fact finder is entitled to disbelieve the recantation of a complaining witness. *Martines v. State*, 371 S.W.3d 232, 242 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi-Edinburg 2008, pet. ref'd) ("A fact finder is fully entitled to disbelieve a witness's recantation."). The jury, therefore, could believe that Reyes-Bonilla sexually abused S.L. on multiple occasions from when she was seven years old until she made her outcry at the age of sixteen and could also determine S.L.'s recantations were not credible and resulted from pressure applied by her family, by Reyes-Bonilla, or other factors. *See Chambers*, 805 S.W.2d at 461 (concluding complainant's recantation did not destroy probative value of evidence of abuse and stating "[t]he jury observed the complainant's demeanor and was entitled not only to reconcile any such conflicts, but even to disbelieve her recantation"); *Gonzalez v. State*, No. 05-17-01463-CR, 2019 WL 1292502, at *2 (Tex. App.—Dallas Mar. 21, 2019, pet. ref'd) (mem. op., not designated for publication) ("And a child victim's recantation in a sexual abuse case does not automatically render the evidence insufficient.") (citing *Owens v. State*, 381 S.W.3d 696, 709 (Tex. App.—Texarkana 2012, no pet.)); *Paz v. State*, No. 05-14-01127-CR, 2015 WL 6386424, at *8 (Tex. App.—Dallas Oct. 22, 2015, no pet.) (mem. op., not designated for publication) (jury as trier of fact was the judge of witness credibility and "resolved the conflicting evidence in this case

and made a credibility determination to believe W.G.'s outcries to Elaina, De La Para, Edwards, Guardiola, and the prosecutor, instead of her recantation.").

In convicting Reyes-Bonilla of continuous sexual abuse of a child and sexual assault of a child, the jury resolved the conflicting evidence and made a credibility determination to believe S.L.'s outcry to Gonzalez and her disclosures to Herrera, Beyer, Barnes, and the prosecutor, instead of her recantation. We afford almost complete deference to this determination. *Jackson*, 443 U.S. at 318–19; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We conclude the evidence is sufficient for a rational juror to find Reyes-Bonilla committed the offenses charged in the indictment, namely, committing two or more acts of sexual abuse against S.L., a child under the age of fourteen, over a period of thirty days or more, and intentionally or knowingly causing the penetration of the sexual organ of S.L. by any means. *See* TEX. PEN. CODE §§ 21.02; 22.011(a)(2)(A). Accordingly, we resolve Reyes-Bonilla's sole issue against him.

## CONCLUSION

We conclude the evidence was legally sufficient to support the convictions and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).

190983F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EDUARDO ISAI REYES-
BONILLA, Appellant

No. 05-19-00983-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1834785-P.
Opinion delivered by Justice Partida-
Kipness. Chief Justice Burns and
Justice Myers participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 20th day of September 2021.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDUARDO ISAI REYES-BONILLA, Appellant

No. 05-19-01002-CR　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F-1834298-P. Opinion delivered by Justice Partida-Kipness. Chief Justice Burns and Justice Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of September 2021.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDUARDO ISAI REYES-BONILLA, Appellant

No. 05-19-01003-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F-1834784-P. Opinion delivered by Justice Partida-Kipness. Chief Justice Burns and Justice Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of September 2021.