

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00181-CR

JOHNNY JEFFRIES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-21-28158

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Fannin County jury convicted Johnny Jeffries of indecency with a child by exposure and assessed a sentence of ten years' imprisonment with a $10,000.00 fine. *See* TEX. PENAL CODE ANN. § 21.11. On appeal, Jeffries argues that the trial court erred by (1) overruling his hearsay objection to the State's outcry witness and (2) overruling his objection to an investigator's opinion testimony. Because we find that the trial court did not abuse its discretion by overruling Jeffries's objections, we affirm the trial court's opinion.

## I.      The Trial Court Did Not Abuse Its Discretion by Admitting Outcry Testimony

In this case, the State's indictment alleged that, on or about June 13, 2015, Jeffries exposed his genitals with intent to arouse or gratify his sexual desire while knowing that A.H., a child younger than seventeen, was present.[1] The State established that the child's maternal grandmother, Carla, was the first adult A.H. spoke to about Jeffries's improper acts. After doing so, A.H. testified that she spoke to a counselor in Oklahoma and revealed more details to the counselor, but the State was never able to locate the counselor despite its best efforts. As a result, the trial court found that Carla was the proper outcry witness.

On appeal, Jeffries does not question the reliability of A.H.'s statement to Carla. Instead, he argues that the counselor was the proper outcry witness and complains that Carla's trial testimony that Jeffries "was always exposing himself to [A.H.]" was outside the scope of her testimony at the hearing to determine the proper outcry witness.

---

[1]To protect the identity of the child victim, we do not use real names for the child or her family members. *See* TEX. R. APP. P. 9.10.

## A. Applicable Law and Standard of Review

"Hearsay is not admissible [at trial] except as provided by statute or" by the Texas Rules of Evidence. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) (per curiam) (quoting TEX. R. CRIM. EVID. 802). Article 38.072 of the Texas Code of Criminal Procedure establishes an exception to the hearsay rule, applicable in proceedings for prosecution of sexual offenses, for statements about the offense made by a child "to the first person, 18 years of age or older, other than the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(a) (Supp.); *see Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). "[T]he 'first person' refers to the first adult who can remember and relate at trial the child's statement that, in some discernible manner, describes the alleged offense." *Reynolds v. State*, 227 S.W.3d 355, 369 (Tex. App.—Texarkana 2007, no pet.) (quoting *Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd)).

## B. Testimony at the Outcry Hearing

Here, the trial court conducted a hearing outside of the jury's presence for the purpose of selecting the proper outcry witness. After doing so, the trial court found that Carla was the first adult who could remember and relay A.H.'s statement at trial. "We review [a] trial court's decision to admit . . . an outcry [statement under] an abuse of discretion" standard. *Owens v. State*, 381 S.W.3d 696, 703 (Tex. App.—Texarkana 2012, no pet.) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). We will uphold the trial court's ruling if it is within "the zone of reasonable disagreement." *Id.* (citing *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd)).

A.H. was nineteen by the time of the outcry hearing. She testified that she was eleven or twelve when Jeffries came to live with her family. A.H. said that, while they were alone in the house, Jeffries made her watch pornographic recordings with him as he masturbated in her presence. When asked who A.H. told about the incident first, she said, "I'm honestly not sure who the very first person was, like, the first adult."

A.H. recalled telling her father that Jeffries had done "some bad things to [her]," but clarified that she did not go into detail.[2] A.H. also said she had talked to her aunt Laura and Carla approximately one month before speaking to her father. A.H. testified that she did not go into detail about the incident with Laura and that her conversation merely revealed that Jeffries "did something to [her]." A.H. underwent a forensic interview with Juan Rangel at the Fannin County Children's Center, but she had spoken before to a therapist in Oklahoma about "isolated incidents but never the full story all in one go." To determine the proper outcry witness, the trial court heard testimony from A.H.'s family.

A.H.'s father testified that A.H. said Jeffries had touched her inappropriately but did not go into any detail. A.H.'s father said he immediately took A.H. to the police station to report the incident.

Laura testified that she witnessed behavioral changes in A.H. and asked her "if everything was okay at home" or "if anyone was hurting her." Laura testified that, despite her questioning, A.H. did not tell her of any sexual abuse until after the offense was indicted.

---

[2]A.H. and other witnesses testified about extraneous offenses committed by Jeffries that are not the subject of this appeal. For example, A.H. said she mentioned a time that Jeffries had exposed his genitals in front of her when he had to urinate during a hike but confirmed she had not spoken to her mother about the indicted incident.

Carla testified that A.H. was sixteen when she told her that Jeffries "ran around in the house naked, and that he tried to get her in bed with him and touch her." According to Carla, A.H. said Jeffries tried to have sex with her, but she kicked him until he let her go. Carla also testified that A.H. said Jeffries would try to get her to watch pornographic recordings with him while he was naked and would try to have sex with her. Carla did not recall A.H. saying anything related to Jeffries masturbating.

Rangel testified that A.H. "mentioned instances of the Defendant having her watch porn with him, him touching her sexually, and trying to have her touch him as well." Rangel testified that, in this third interview with A.H. in 2023, A.H. revealed that Jeffries masturbated in front of her while having her watch pornography. According to Rangel, A.H. said Jeffries "tried to unbutton her pants trying to get her to start masturbating, and she refused, but she later gave in as he stated he would hurt her mom if she didn't let it happen."

After the hearing, the State asked for a continuance because it needed more time to find A.H.'s Oklahoma therapist. Even after obtaining a continuance for that purpose, the State informed the trial court at a subsequent hearing that it could not locate the therapist. Robert Williams, an investigator with the district attorney's office, testified about his extensive efforts to locate the therapist. As a result, the State asked that Rangel be designated as the outcry witness.

To support its argument, the State argued that A.H. told Rangel and not Carla that Jeffries had masturbated in front of her. However, when Jeffries objected to Rangel's designation, the State argued that Carla was the first adult A.H. had told about the allegations and admitted that

5

Carla knew about the offense even before the Oklahoma therapist. As a result, the trial court determined that Carla was the proper outcry witness.

### C. Testimony at Trial

The State presented A.H., Laura, and Carla as the first witnesses. A.H. testified that Jeffries moved in with her and her mother when she was ten or eleven years old. A.H. said that, in 2015 or 2016, she was left alone with Jeffries when he played a pornographic recording for her, which they watched for twenty or thirty minutes. A.H. heard Jeffries behind her, turned around, and saw him masturbating. According to A.H., Jeffries masturbated for ten or fifteen minutes before going into the bathroom. A.H. testified that the incident "felt kind of wrong."

According to A.H., Jeffries left bruises and cuts on her mother, which indicated to A.H. that Jeffries was abusing her mother. Because A.H. was afraid of Jeffries, she believed him when he said he was going to kill her mother if she told anyone about the incident. A.H. testified that she was around sixteen when she made an outcry to Carla.

Laura testified that Jeffries was always in underwear or a pair of shorts, even in front of children, which she found odd. Laura said she noticed that A.H., who was typically very outgoing, started withdrawing from family. According to Laura, A.H., who used to enjoy wearing dresses, began wearing only hoodies or long pants and started growing her hair out to cover her face. Laura knew something was wrong, but despite prodding, A.H. would not open up to Laura.

Carla also testified that Jeffries was always in his underwear. Carla noticed changes in A.H.'s behavior and asked her what was wrong. In response, A.H. told Carla what had happened

6

with Jeffries. Carla tried to encourage A.H. to reveal the incident to her father or the police, but A.H. would cry at the idea and Carla did not want to rush her. Carla testified, without objection,

> [A.H.] told me that he [Jeffries] was always exposing himself to her and that he had tried to make her touch him, and at one time, he got her down on the bed and tried -- and actually tried to have sex with her, and she kicked him so much -- hard and so much that he let her go.

According to Carla, A.H. spoke to counselors about the incident.

### D.    Analysis

The record in this case shows that Carla was the first person over the age of eighteen that A.H. spoke to about Jeffries's indecent exposure. Even so, Jeffries argues that the Oklahoma counselor must have known more detail about the allegations, but she was never located. Carla's testimony at both the outcry hearing and trial established that Jeffries exposed his genitals to A.H. As a result, we find that the trial court did not abuse its discretion by concluding that Carla was the proper outcry witness.

Although Jeffries argues that Carla made statements at trial that exceeded the scope of her testimony at the outcry hearing, including that Jeffries tried to have sex with A.H., Jeffries lodged no objection to Carla's testimony at trial. As a result, he has not preserved this complaint for our review. *See* TEX. R. APP. P. 33.1.

We overrule Jeffries's first point of error.

### II.    The Trial Court Did Not Abuse its Discretion by Overruling Jeffries's Objection to the Investigator's Testimony

Terry Eddington, a captain with the Bonham Police Department, testified that he investigated A.H.'s allegations against Jeffries. Eddington said that he attended A.H.'s interview

7

with Rangel at the Children's Center. When the State asked Eddington what offense he believed had occurred from watching A.H.'s recording, Jeffries objected that the question called for "a conclusion of law. Purview of the jury." After the trial court overruled the objection, Eddington answered that the offense raised by A.H.'s interview was "[i]ndecency with a child by contact." The State clarified that Eddington was investigating that offense.

"An opinion is not objectionable just because it embraces an ultimate issue." TEX. R. EVID. 704. "Texas courts disapprove of the 'province of the jury' objection . . . generally because such an objection is imprecise." *Lum v. State*, 903 S.W.2d 365, 370 (Tex. App.—Texarkana 1995, pet. ref'd) (quoting *Hopkins v. State*, 480 S.W.2d 212, 218 (Tex. Crim. App. 1972)).

Even so, Jeffries argues that the trial court should have excluded the evidence because Eddington offered his opinion that Jeffries was guilty of the indicted offense. However, Eddington made no legal conclusion. Eddington did not testify either that he believed A.H.'s allegations or that Jeffries was guilty in his opinion. Instead, he was merely explaining how Jeffries became a suspect, which the law permitted him to do. *See Richter v. State*, 482 S.W.3d 288, 300 (Tex. App.—Texarkana 2015, no pet.) (citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995)); *see also Hernandez v. State*, 585 S.W.3d 537, 554 (Tex. App.—San Antonio 2019, pet. ref'd). As a result, the trial court did not abuse its discretion by overruling Jeffries's objection. We overrule Jeffries's last point of error.

8

## III.   Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     May 27, 2025
Date Decided:       June 13, 2025

Do Not Publish